No. 32,668

THE STATE OF KANSAS, *Appellee*, v. ALVA THYER, *Appellant*.

Opinion filed January 25, 1936.

F. M. Ball, of Mound City, and J. Q. Wycoff, of Garnett, for the appellant.

Clarence V. Beck, attorney general, Earl B. Swarner, Theo. F. Varner, assistant attorneys general, and Harry C. Blaker, of Mound City, for the appellee.

The opinion of the court was delivered by

SMITH, J.: In this action the defendant was convicted of a violation of R. S. 21-435; that is, assault with intent to do great bodily harm. He appeals.

On the day of the assault defendant, Alva Thyer, and his brother drove past a farmyard where the man assaulted, one Elmer McGee, and some other men, were standing. There was testimony that defendant "thumbed his nose" at McGee. Defendant and his brother went to the home of the brother. McGee and his son went to the home of another neighbor. After arriving at the home of the brother defendant took a team and wagon and drove to a place where an abandoned railroad right of way crosses the highway and passes alongside of land owned by McGee. His intention in going to this place was to get some cinders and chat to put on his garage floor. Upon starting out he put a 30-30 rifle in the wagon. When McGee and his son reached a corner north of where defendant was getting the cinders—where ordinarily they would have turned toward home—they saw defendant. They drove down to where he was. When they arrived there they stopped the car and both got out. The son got out on the right-hand side of the front seat and started toward defendant; Elmer got out on the left-hand side of the front

seat and opened the rear door, took a cane out of the back of the car and started toward defendant. There is a conflict in the testimony as to whether anything was said and as to how close Elmer McGee got to defendant. This was given by different witnesses as from sixty to ninety-five feet. At any rate, defendant dropped his shovel, picked up his rifle and fired twice. One shot took effect in the cheek and came out the neck of Elmer McGee.

Defendant was arrested, bound over and tried for a violation of R. S. 21-431, that is, assault with intent to kill. He was convicted of a violation of R. S. 21-435. He filed a motion for a new trial. This was denied. Later during the same term he filed an application to vacate the judgment and amended motion for a new trial. This was heard and denied. Hence this appeal.

The first error of which defendant complains is that the following questions and answers were permitted when a witness was on the stand who was present when defendant first drove down the road. The question was, "Was there anything that took place at that time, when you were standing there, between Alva Thyer and Elmer McGee, that showed any marks of ill feeling?" The objection was made that this question called for a conclusion of the witness. The answer was, "Well, he thumbed his nose at him." The witness demonstrated to the jury just what the gesture was.

It is difficult to see where this was testifying to a conclusion. No doubt every member of the jury understood that this is a well-known gesture by which the one who makes it shows his contempt for the one toward whom it is made.

The next error of which the defendant complains is that the court permitted the state to indorse several names on the information on the morning the trial started. The record discloses that when this request was made and objected to by defendant the trial court stated to counsel for defendant that he would have an opportunity to interview these witnesses. No request for time to do this was made. This is a matter within the discretion of the trial court. (See *State v. Pack*, 106 Kan. 188, 186 Pac. 742.) In this case it does not appear that defendant was prejudiced by permitting the names of the witnesses to be indorsed.

Defendant next urges that the court erred in not permitting Lawrence Hedges, who testified for the state, to be asked on cross-examination whether it was not generally known in the vicinity that defendant was a hunter. While the defendant should have been

permitted to show anything that would tend to explain why he had the rifle with him, it does not appear that he was prevented from doing that in this instance. Since several witnesses testified to the fact that defendant was a hunter the testimony of this witness would only have been cumulative on this point.

Defendant next argues that a remark of the court in overruling an objection was error. Counsel asked the son of Elmer McGee what he and his father went to Bob Mitchell's place for. The state objected. The following colloquy occurred:

"COUNSEL FOR DEFENDANT: It simply shows the purpose and object that he had in being there.

"BY THE COURT: He may answer. I don't want it to appear he was just out looking for this particular man."

The remark set out above is urged as error. The question was a proper one. It was obviously asked for the purpose of enabling the jury to grasp the entire surroundings. While the court might have overruled the objection without speaking in the first person, it does not appear that defendant was prejudiced by the remark.

Defendant next argues that the refusal to permit certain questions to be asked of Albert McGee on cross-examination was error. One inquiry was whether the sight of defendant in the right of way made "you angry." If by the question counsel wanted to know the effect on the young man's mind it was immaterial. If he wanted to know the effect on the father's mind then the boy was incompetent to testify to that.

Defendant next urges as error that he was not permitted to show in the cross-examination of Elmer McGee, the complaining witness, that he had filed a damage suit for $10,000 against defendant on account of the assault. This cross-examination might well have been permitted. It does not, however, appear that the refusal to permit the questions to be asked so unduly limited the cross-examination as to prejudice the rights of defendant. The limits within which cross-examination of a witness may be kept rest largely in the discretion of the trial court. (See *State v. Gibson*, 131 Kan. 570, 292 Pac. 931.) The defendant later offered the files of the civil action as a part of his defense. An objection to it was sustained and this is urged as error. This proffered evidence was not submitted to the court when the motion for a new trial was argued. For that reason it cannot be considered by this court for the first time on appeal. (See *State v. Springer*, 127 Kan. 174, 272 Pac. 189.)

Defendant next argues that the trial court erred in admitting evidence of a remark made by defendant about five years before the shooting. Evidence had been introduced that defendant and complaining witness had been in a fist fight about five years before. The witness testified about being with defendant after the fight. He was then asked, "What was said at that time?" Defendant objected to this as being too remote. The court overruled the objection. The answer was, "He said he would kill Mr. McGee sometime." The evidence was of some probative value as tending to throw some light on the feeling of defendant toward the complaining witness. It was made competent by evidence of other witnesses as to unfriendly conduct of defendant toward complaining witness on different occasions through the intervening years.

The next error argued by defendant has to do with certain questions that were asked of defendant. When he had testified about putting his gun in the wagon he said he had always taken a gun with him in the winter since he was a little boy. The following then occurred:

"Q. I will ask you if you had Mr. McGee in mind?
"By Mr. Blaker: We object to that (interruption).
"A. No, sir; I didn't have Mr. McGee in mind.
"By the Court: Objection sustained."

It will be noted that while the record shows that the objection to the question was sustained the defendant was permitted to answer. The state did not ask that the answer be stricken and the jury got the full benefit of the denial.

The next error of which defendant complains deals with the cross-examination of defendant. When he testified that he called to Elmer and told him to stop, just before the shooting, the following colloquy occurred:

"Do you think Elmer McGee is a fool?
"By Mr. Wycoff: Object to that as not proper cross-examination.
"By the Court: Oh, yes, it is; he can answer.
"A. Elmer had blood in his eye, and Albert both.
"Q. Do you think he was crazy? A. He was crazy with anger then."

This evidence was not prejudicial to defendant. The defendant must have desired the jury to believe that he thought both the McGees were angry at him and intended to harm him at the time

he shot. This evidence tended to strengthen that theory of the defense.

The defendant next argues that the court erred in sustaining objection to certain evidence offered by defendant as to certain measurements made at the scene of the shooting. It appears from the record that defendant offered a plot. It was not admitted in evidence because it did not appear that the person who was to identify it could testify that the measurements thereon were actually the measurements that were taken. Furthermore, the only question in the case upon which this testimony would have any bearing was as to whether McGee was sixty or ninety-five feet away from defendant when he was shot. The change of a few feet in that distance would not be of any benefit to defendant.

The next error of which defendant complains has to do with a remark made by the trial court during the examination of a witness for the defense. This witness had testified that he was present when defendant was supposed to have said he would kill McGee. He testified that he did not hear any such remark. At this point the following occurred:

"Q. If any such a statement was made, Mr. Powell, do you think you would remember it?

"By Mr. Blaker: Object to that as calling for a conclusion of this witness.

. . . . . . . . . . . . .

"By the Court: Let me ask him. Why were you and some others going out to get this man on that evening? A. Went out to get him to come back and pay his fine.

"By the Court: Well, were you an officer? A. No.

"By Counsel for Defendant: The juror asked what he said before; they didn't hear him.

"By the Court: Well, some of you develop it. I would like to know what the connection was, of this fellow hauling Thyer around."

The remark of which defendant complains is where the trial court referred to the witness as "this fellow." It was not the best of judicial language, but hardly sufficient to reverse a case.

The next error of which defendant complains is that the court did not properly instruct the jury. The defendant was charged with a violation of R. S. 21-431 and the court instructed on that section. The court also instructed on R. S. 21-435. It was under this section that defendant was convicted. Defendant argues that such an instruction should not have been given, since there was no evidence to warrant the giving of it. The contention is answered by what

this court said in *State v. Wright,* 112 Kan. 1, 208 Pac. 630. There this court said:

"As one is presumed to intend the natural and probable consequences of his acts, and as the foregoing were the only versions of the shooting, the record fails utterly to establish anything in the nature of culpable negligence. It does clearly establish an intentional shooting with a deadly weapon. However, the conviction under which the information was drawn would require malice, assault with a deadly weapon and an intent to kill, maim, rob, or commit some other felony, and while the circumstances detailed indicated all these things clearly enough to warrant a conviction, still it might possibly be that the wounding took place by the act of the defendant under such circumstances as would have constituted murder or manslaughter if death had ensued." (p. 3.)

Here the jury might have believed that defendant fired into the ground and the bullet ricocheted and hit McGee. In such a case a conviction under R. S. 21-435 would be proper. What more likely happened is that the jury for some reason wanted to convict the defendant of the lesser offense. In either event defendant cannot complain.

Defendant next complains because the jury was not instructed on simple assault and battery under R. S. 21-436. There was no evidence whatever to justify such an instruction. We cannot say that shooting a man with a 30-30 calibre rifle is simple assault and battery.

The next error of which defendant complains is misconduct of the jury. After the motion for a new trial had been denied, but during the same term of court, defendant filed an application to vacate the judgment and amended motion for a new trial. This motion included all the grounds included in the motion for a new trial and in addition "misconduct on the part of the jury tending to prevent a fair and due consideration of the case" and also "irregularity in obtaining the verdict and judgment or sentence." When this motion was called for presentation the defendant offered affidavits of three jurors. These affidavits were to the effect that these jurors had voted for acquittal until the foreman told them that the judge would follow any recommendation that the jury would make, and that they believed the foreman and voted guilty and for a recommendation that appeared on the verdict. One of these jurors stated in his affidavit that the foreman said that he had talked to the judge and thought the judge would follow the jury's recommendations. At this point it should be stated that the verdict

as finally approved contained the following statement written in pencil:

"We, the jurors, recommend leniency; that the punishment be not more than six months in the county jail."

When defendant presented the above affidavits the trial court made a statement, in part, as follows:

"The foreman of this jury, down in the clerk's office, at the noon recess, I think the last day that this jury was deliberating upon its verdict, asked me if it was permissible for him to ask me a question, and I told him he could do so but it might not be answered. As I now remember he wanted to know what the minimum penalty was or the maximum penalty was, and I told him that was contained in the instructions. As I remember, he then asked me if a jury had a right to make a recommendation to the court about the punishment, and I told him that the court took care of the punishment and it did not concern the jury, but that a recommendation in a verdict did not vitiate the verdict, as I understood the law. I think that was about all that was said about it. If there is anything wrong about that, why the supreme court can say so. I am going to overrule the motion for a new trial, because I am not going to be bothered by jurors trying to impeach their verdict. I did tell this foreman that he was not permitted to talk about the facts in this case, to me or anybody else, and he definitely understood that and he did not discuss the facts of the case with me."

The argument of defendant is that this constituted misconduct of the jury sufficient to reverse the case.

It would have been better if the trial court had not talked to the foreman at all when asked by the foreman if he could ask him a question. The better way would have been to advise the foreman that he should not ask him any question except from the jury box and in the presence of the other members of the jury. Such a course of conduct would have prevented any such question as that with which we are now confronted. It is the duty of the trial court to keep the discussion of the case in the jury room. As to the affidavits of the jurors, they indicate an effort on the part of the jurors to impeach their verdict. We have said many times this could not be done. (See *State v. Finney*, 141 Kan. 12, 40 P. 2d 411.)

The judgment of the trial court is affirmed.