No. 37,945

STATE OF KANSAS, *Appellee*, v. L. C. DAVIS, *Appellant*.

(218 P. 2d 215)

Opinion filed May 6, 1950.

*George K. Melvin,* of Lawrence, argued the cause, and was on the briefs for the appellant.

*Robert B. Oyler,* county attorney, argued the cause, and *Harold R. Fatzer,* attorney general, *C. Harold Hughes,* assistant attorney general, and *Milton P. Allen,* assistant county attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal from a conviction of manslaughter.

Appellant was charged under G. S. 1935, 21-431 with assaulting one William Ferguson with a shotgun with intent to kill but instead was found guilty of assault with intent to commit manslaughter under G. S. 1935, 21-434. The latter offense being included within the former, the trial court instructed on it as well as on other lesser offenses.

Appellant does not contend the facts do not bring the case within that particular manslaughter section of our crimes act but argues the trial court erred in an instruction thereon and also on an instruction pertaining to self defense. The contentions will be con-

sidered following a narrative of facts deemed necessary to treat the alleged errors.

The appellant, L. C. Davis, and one William (Scoop) Ferguson, two colored citizens of Lawrence, became involved in a controversy in a barbershop located on East Eighth street in Lawrence. The subject of the controversy was which one of them was the best shoeshiner. We need not narrate all the debate. It is sufficient to say it constituted quite a verbal affair in the presence of others who absented themselves abruptly when the discussion became heated and a razor and pistol made their appearance. Appellant was thirty years of age and Ferguson seventy. Ferguson had a shoeshine parlor of his own in the 700 block on Massachusetts street, that being the main business street of the town. Ferguson had gone to the barbershop on East Eighth street to get a shave and haircut. Appellant's version with respect to the remark that really touched off the display of force is as follows:

"In the barber shop I told Ferguson I knew I was the best shoe shiner and I bet him $50 because I got a shoe shine at his place and the wind blew it off before I got to the corner and that started the war."

Ferguson testified it was the first time he had ever seen appellant. The appellant testified: When Ferguson "dived in his pocket" he ". . . dived for something to fight with and got a razor. Ferguson had an old shiny pistol, 32 or 38 caliber. They were all flying out of there"; Ferguson kept cussing him and said he was going to kill him; he, Ferguson, tried to kick him out from behind the barber chair and he (appellant) tried to cut Ferguson's leg; he finally got out of the door, laughed and told Ferguson to "cool down and let's forget about it"; his (appellant's) car was parked in front of the barbershop; he had been squirrel hunting that morning and had a shotgun in the car; thereafter he went west to the post-office in his car, cashed a money order, went back to the Santa Fe restaurant and then started for the police station to report the affair and to have Ferguson arrested; the boy in the car with him said to take him to the telegraph office and to forget about having Ferguson arrested; he then turned right (traveling north on Massachusetts street in the 700 block).

Ferguson's story concerning what transpired in the episode, previously narrated, varies somewhat. His story was appellant grabbed a razor and it was then that he, Ferguson, reached for his "antique pistol," that when they left the barbershop on East Eighth street

appellant had said two or three times, "I am going to kill you, you dirty son —— — ——."

We now reach the next meeting of the men on Massachusetts street. Ferguson stated: He left the barbershop on East Eighth street for his own shop at 716 Massachusetts, that being on the east side of that street; it was a distance of about five blocks; he went west on Eighth street to Massachusetts and then turned north towards his shop; after walking about 150 feet he was shot by appellant with a shotgun from a car which appellant was driving; he, Ferguson, thought three shots were fired by appellant; he did not see a boy in appellant's car but did see appellant pointing the shotgun at him.

Appellant's story, in substance, was:

Cars were parked along the east side of the street; as he was driving north one of the cars backed out and he had to slow up; about that time the boy with him said, "Look out, there is the old man" (meaning Ferguson); he saw Ferguson trying to come up between the cars and he saw the Ferguson pistol shining in the sunlight; he jumped back and grabbed the shotgun; it got caught and went off and the shot hit a red car; he started to drive away and saw Ferguson coming; he did not intend to kill Ferguson but intentionally shot him in the leg.

Other testimony of disinterested witnesses was: Two shots were fired; some of the pellets from the shotgun shell went through a car and some went through a studio window about six feet above the sidewalk; Ferguson fell in the doorway of a business place; he had a gun in his hand; after he was shot and was down on his knees Ferguson was probably pointing his pistol at appellant's car.

There was also testimony Ferguson was in the street. Other testimony might be reviewed but this is sufficient for present purposes. The instruction on self-defense complained of reads:

"9. The defendant appears to admit that he fired at William Ferguson with his shotgun, but denies that he intended to kill him. He claims that William Ferguson's conduct was such that he feared that Ferguson was liable to attack him and that he shot him to prevent him from doing him injury. If under all the circumstances the defendant had reasonable ground to believe he was about to be attacked by Ferguson, he would be justified in taking such reasonable steps as were necessary to prevent Ferguson from harming him."

Appellant contends a correct instruction would have stated defendant ". . . would be justified in taking such steps as ap-

peared *to him* at the time reasonably necessary to prevent Ferguson from harming him."

It is true the test is not what the circumstances actually were but whether the circumstances were such as appeared to the defendant at the time to be reasonably necessary to protect himself. (*State v. Reed*, 53 Kan. 767, 779, 37 Pac. 174; *State v. Keehn*, 85 Kan. 765, 792, 118 Pac. 851; *State v. Snow*, 121 Kan. 436, 247 Pac. 437.) Of course, the apprehension of danger must be reasonable and of this reasonableness the jury is the ultimate judge. (*State v. Keehn*, supra, p. 792.)

It will be observed the first part of the instruction reads:

"9. The defendant appears to admit that he fired at William Ferguson with his shotgun, but denies that he intended to kill him. He claims that William Ferguson's conduct was such that he feared that Ferguson was liable to attack him and that he shot him to prevent him from doing him injury."

Construing the instruction in its entirety we think the court meant appellant might use such force as at the time reasonably appeared to him to be necessary. Although the instruction might have expressed that thought more clearly we think the instruction was not sufficiently defective to require a reversal. (*State v. Reed*, supra, p. 779.) No objection was lodged against it at the time of trial. No fuller instruction was requested. Considering the instruction in its entirety we think it cannot reasonably be said appellant's substantial rights were prejudiced thereby.

The next objection is to instruction No. 7, which reads:

"You will observe, gentlemen, that the foregoing section of our statute, both Sections 21-434 and 21-435, use the term 'manslaughter', which is the unlawful killing of a human being, without malice, and yet without justification or excuse. I thus define the word 'manslaughter,' not because it is the crime charged here, for it is not, but in order that you may say, if you find that the defendant assaulted William Ferguson and wounded or disfigured him, or gave to him great bodily harm, or endangered his life, whether he did so under such circumstances as would have constituted manslaughter if death had ensued from the acts thus committed by the defendant."

As previously indicated herein the instruction was intended to cover an offense under section 41 of our crimes act, G. S. 1935, 21-434, which reads:

"Every person who shall be convicted of an assault *with an intent to commit* any robbery, rape, burglary, *manslaughter,* or other felony, *the punishment for which assault is not hereinbefore prescribed,* shall be punished by confinement and hard labor not exceeding five years, or by imprisonment in the county jail not less than six months." (Our italics.)

In support of appellant's contention he argues an instruction under that section should have been as given in *State v. Murray*, 83 Kan. 148, 110 Kan. 103, as follows:

"If a person assault another with a deadly weapon, in heat of blood, upon reasonable provocation, without malice and without legal justification or excuse, but with intent to kill, he may be convicted of assault with intent to commit manslaughter under section 41 of the crimes act." (Syl. ¶ 10.)

That was the substance of the instruction given in the Murray case, p. 156, and it was held the instruction was not erroneous. We, however, do not read syllabus 10, quoted above, as supporting the contention there can be no conviction under this section of the crimes act except under the identical language employed in the instruction given in the Murray case. Nor do we think the corresponding portion of the opinion, when carefully analyzed, is properly susceptible of appellant's contention. While the facts in the Murray case were in the main quite similar to those in the instant case insofar as elements of the crime are concerned, there was positive evidence in the Murray case the offense was there committed in the heat of blood. In the instant case appellant makes no such contention. In fact, appellant's theory is that he had decided to forget the trouble at the barbershop on East Eighth street and had decided not to have Ferguson arrested. We think instruction No. 7 was reasonably sufficient under this section of the crimes act as applied to the facts in this particular case. We are referred to no particular respect in which the instruction resulted in prejudice to appellant.

The judgment is affirmed.

WEDELL, J. (dissenting in part): I concur in the statement of the law on self-defense contained in syllabus ¶ 1 and the corresponding portion of the opinion. I dissent from that portion of the opinion pertaining to the instruction given on that subject.

SMITH, J., concurs in the foregoing dissenting opinion.