No. 38,488

STATE OF KANSAS, *Appellee,* v. ELVON LEROY BRIDGE, *Appellant.*

(244 P. 2d 195)

Opinion filed May 10, 1952.

*Elisha Scott,* of Topeka, argued the cause, and *John J. Scott* and *Kenneth Ray,* both of Topeka, were with him on the briefs for the appellant.

*Harold H. Harding,* county attorney, of Kansas City, argued the cause, and *Harold R. Fatzer,* attorney general, *J. Milton Sullivant,* assistant county attorney, and *Francis J. Donnelly,* assistant county attorney, both of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: Appellant was duly charged in the district court of Wyandotte county with felonious intent, as defined by section 431 of our Crimes Act (chap. 21, art. 4, G. S. 1949). Upon a jury trial he was found guilty under section 435 of that act. He has appealed and contends the court erred by refusing to instruct on simple assault; that the verdict is contrary to law and not sustained by the evidence; that the court erred in overruling his motion for a new trial, and that the court misdirected the jury on material matters of law.

The story of the assault may be stated as follows: The complaining witness, Roy Dempsey, and a Mrs. Alpha Seals, were employed at Colgate-Palmolive-Peet Company in the Armourdale district in Kansas City. She got off from work there at 12:30 a. m. As shown by appellant's abstract the complaining witness testified:

"That . . . on August 6, 1950, . . . he picked up Mrs. Seals at about 12:30 at the Colgate plant and drove to Ninth and Ivandale, where he parked his car, after backing it in for approximately 95 feet south of the intersection at Ninth and Ivandale; that he had 5 cans of beer in the car, and that he also had a 32 caliber double action revolver in the glove compartment; that it was approximately 12:40 when he parked his car; that about 40 minutes after he had parked he first became alarmed that someone else was in the vicinity; that he had heard a car door slam before, but he did not know from which direction the sound came; that he did see a car at Ninth Street about a block from where he was parked; that he had not noticed the lights of the parked car on Ninth when they were turned off; that after he was parked there approximately 40 minutes, he saw a reflection in the mirror of his car, and that he got out of his car and walked around the car to see if anyone was there; that he had no weapon in his hand at the time, but he did have a flashlight, which he turned on and flashed around; that he did not see any one at this time; that there were some street lights north of where he was parked on Ninth Street; that the left front door of his car was open while his car was parked there; that after he looked around the car and found no one he got back in the car, and he and Mrs. Seals conversed for˙about forty-five minutes; that Mrs. Seals spoke to him, telling him there was a man standing at the side of the door on the side where he was sitting; that he looked and saw a man standing there with a pistol in his hand, pointed at him; that the man was wearing a white handkerchief over the lower part of his face; that the man then spoke to him saying, 'You son-of-a-bitch, don't you move'; that he then reached with his right hand into the glove compartment and took out his gun; that as he started to raise up, the man shot him in the right side of the chest; that he kept right on getting out of the car, and then he began shooting his gun at the man; that the gun did not fire the first time; but it did fire five subsequent times; that he thought he had hit the man because the man fell."

## Respecting that transaction Mrs. Seals testified as follows:

"That on August 6, 1950, shortly after midnight, . . . she left the plant, . . . in Roy Dempsey's automobile, and they went together to Ninth and Ivandale, where Dempsey stopped the car; that Dempsey then backed the car into the roadway just south of Ivandale on Ninth Street for a distance of about 90 or 95 feet, and that she drank a bottle of beer; that there was one street light quite a way back of where the car was parked, and there were lights on Ninth Street; that she and Dempsey sat in the car drinking beer from approximately 12:40 for about (30) or (40) minutes. That a man appeared at the left-hand front door, wearing a white handkerchief on the lower part of his face, and with a gun in his hand; that the man spoke to Dempsey, telling him to sit still; that Dempsey started to get out of the car, but before

doing so, he reached into the glove compartment and took out his gun; that Dempsey spoke to the man, telling him not to shoot; that as Dempsey got partially out of the car, she heard a gun shot followed by several other shots; that after the gun shots, the man with the handkerchief over his face started running toward the rear of the car."

The above testimony was not materially modified by the cross-examination of the witness. It was the only testimony in the record which deals with the assault. Immediately after the shooting Dempsey drove to St. Margaret's Hospital, situated in the vicinity. There the doctor found that he had been shot in the right breast, the bullet having entered his body above the nipple and lodged in the right lung cavity. It was not removed from the lung because of the imminent risk involved in such an operation. He was released from the hospital six days later.

When Dempsey and Mrs. Seals reached the hospital the police were promptly notified. Two detectives soon came to the hospital and Mrs. Seals went with them to the scene of the tragedy. They found a Buick automobile about a block from where Dempsey had parked his car and near it the defendant was lying on his back on the ground. He was in his stocking feet. His shoes had been removed and placed on the floor of the automobile between the front and rear seats. A handkerchief was tied and hanging loosely about his neck. Defendant was in pain and was taken to the hospital. There three doctors operated on him and found that he had four gunshot wounds. He was treated and cared for at the hospital and was released on August 23, 1950. The morning after the shooting the officers re-examined the area where it occurred and found a pistol in a bunch of weeds situated between the Buick car and the place Dempsey had parked.

Defendant testified in his own behalf, admitted the Buick car belonged to him, and also that the pistol found by the officers belonged to him. He testified he had no recollection of the incidents; that the evening before he had been drinking beer and got pretty drunk; that he had an automobile mechanic working on his car, which work was not finished until late at night, and that he had no recollection of driving the car from the garage, or anything that occurred that evening until the next day when he was in the hospital. The detectives who found him the evening of the shooting and who saw him and talked with him soon after he was taken to the hospital observed no evidence of intoxication and found no odor of alcohol on his breath.

The principal point urged by counsel for appellant for reversal is the refusal of the court to give a requested instruction on simple assault. They cite *State v. Mowry*, 37 Kan. 369, 15 Pac. 282, where it was held:

"Instructions upon an offense inferior in degree and included in the one charged should not be given, unless there is some evidence tending to show that the defendant is guilty of such offense."

And in the opinion (p. 378) it was said:

"The instructions should conform to the testimony of the case. If there is even slight evidence that the defendant may have committed a degree of the offense inferior to and included in the one charged, the law of such inferior degree ought to be given, but should never be given upon a degree of the offense which the evidence does not tend to prove."

In that case defendant was charged with first degree murder and found guilty as charged. Among other questions argued on appeal was the contention the court erred in failing to give instructions on the first or second degree of manslaughter. The court did give instructions on murder in the first degree, murder in the second degree, and manslaughter in the third degree and in the fourth degree. The court said (p. 378):

"There was no testimony tending to show that the defendant was guilty of manslaughter in either the first or the second degree, . . . An instruction upon either the first or second degree of manslaughter . . . might have confused and misled the jury. The action of the court in this respect was not erroneous." (Citing cases.)

The rule there stated has been applied in many of our cases. It conforms to our statute (G. S. 1949, 62-1447), the pertinent parts of which read:

"The judge must charge the jury in writing and the charge shall be filed among the papers of the cause. In charging the jury he must state to them all matters of law which are necessary for their information in giving their verdict. . . ."

In *State v. Mize*, 36 Kan. 187, 13 Pac. 1, defendant was tried on a charge of assault and battery and was convicted of assault. The court instructed the jury:

"Both of the offenses of assault and battery, and of assault, are included in the charge in this case, and if you find the defendant guilty, he may be convicted of either of said offenses, as the evidence may warrant; . . ."

Respecting this the court said:

"This instruction was not applicable to the facts proven on the trial, and may have misled the jury in their verdict."

In *State v. Powers*, 92 Kan. 220, 139 Pac. 1166, defendant was prosecuted under what was then section 38 (now 431) of the Crimes Act and found guilty. On appeal it was contended that the court erred in not giving an instruction under section 42 (now 435) of the Crimes Act. The court held:

"In a prosecution under section 38, above referred to, it is not error to refuse an instruction embodying section 42 (Gen. Stat. 1909, § 2530), where there is no evidence to sustain a verdict of guilty under the last-named section."

To the same effect, see *State v. Young*, 109 Kan. 526, 200 Pac. 285, and the cases cited (pp. 532, 533).

Counsel for appellant rely heavily upon the case of *State v. Lanam*, 140 Kan. 434, 36 P. 2d 966, where, as here, defendant was charged under section 431 of the Crimes Act and found guilty under section 435. In that case the court gave instructions on both of those sections and also instructed on simple assault. Counsel say the court approved the instruction on simple assault. We think this court did no more than state a fact shown by the record, and that the simple assault instruction was not approved. The court said (p. 435):

"The argument of defendant is that under the facts proved he was guilty of simple assault if he was guilty of anything. It is hard to imagine a case where it is any plainer that the facts necessary to raise the offense to a higher degree than simple assault exist. The gun was pointed, it was loaded, intent to kill was shown by the statements of defendant. There remained only the pulling of the trigger for murder or manslaughter to ensue. The facts come clearly within the statute."

In *State v. Thyer*, 143 Kan. 238, 53 P. 2d 907, defendant, as here, was charged under section 431 of our Crimes Act and convicted under section 435. In the opinion (p. 243) it was said:

"Defendant next complains because the jury was not instructed on simple assault and battery under R. S. 21-436. There was no evidence whatever to justify such an instruction. We cannot say that shooting a man with a 30-30 calibre rifle is simple assault and battery."

In *State v. Barnett*, 156 Kan. 746, 137 P. 2d 133, it was held:

"In a prosecution for assault with intent to kill, it is not necessary for the trial court to give an instruction on simple assault and assault and battery where there was no evidence that the defendant was guilty of the lesser offenses." (Citing *State v. Young*, supra, and *State v. Thyer*, supra.)

Under the evidence previously recited we see no room for an instruction on simple assault. The giving of such an instruction would have tended to confuse the jury and would have been erroneous.

The contention that the instructions were confusing is not well taken. We have carefully examined them and find they were unusually clear and explicit. The evidence amply sustained the verdict. There was no error in overruling the motion for a new trial. The judgment of the trial court is affirmed.