No. 39,964

THE STATE OF KANSAS, *Appellee*, v. WILLIAM LEE HANKS, *Appellant*.

(292 P. 2d 1096)

Opinion filed January 28, 1956.

*Walter F. McGinnis*, of El Dorado, argued the cause, and *Allyn M. McGinnis*, of El Dorado, was with him on the briefs for the appellant.

*Dick Moss*, assistant county attorney, Butler county, argued the cause, and *Harold R. Fatzer*, attorney general, and *Robert M. King*, county attorney, Butler county, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: Defendant was charged, tried and convicted of felonious assault with intent to kill or maim Henry Miller, as defined by G. S. 1949, 21-431. Thereafter he perfected an appeal specifying error in particulars which will be discussed later.

Defendant William Lee Hanks and his wife, Phyllis, were divorced in the year 1954. Before her divorce became final, she married Henry Miller, the complaining witness in this action. However, they did not live together. Phyllis lived with her two small children on her grandfather's farm several miles east of El Dorado.

Defendant saw Phyllis and the children occasionally. Miller also visited her on frequent occasions and assisted her with the chores on the farm. Ill feeling had existed between defendant Hanks and witness Miller for several years. At 11 p. m. on the night of the assault, defendant, Phyllis and Laymon were sitting in the front seat of defendant's automobile at the farmhouse. Phyllis was under the wheel, defendant immediately to her right, and Laymon next to him.

About 10:30 p. m., Henry Miller left El Dorado and drove out to see Phyllis. She was not home, and on his return to El Dorado he saw her pass in defendant's car. He turned around to go back to the farm and drove around a four mile section. He saw defendant leave the farmhouse. Miller turned his car back to a schoolhouse and waited about fifteen minutes. He parked his car and walked approximately a quarter mile to Phyllis' house. He noticed defendant had returned and was sitting in the automobile. He walked up to the left side of the car, pulled the door open and put his hand on Phyllis' shoulder. Laymon jumped out of the car and a fight ensued between Miller and Laymon, who shot at Miller, the bullet grazing his cheek. Miller subdued Laymon and returned to the automobile. Defendant got out of the car with a loaded pistol, released the safety and shot Miller in the jaw, the bullet lodging near the spine, causing severe permanent injury. As Miller lay on the ground, Phyllis said, "We must get him to the hospital." Defendant said, "No, let him lay there." Defendant testified after the shooting that Miller asked him for help and defendant refused, saying if he had been shot, Miller would have let him lay there the same way; that Laymon then talked him into taking Miller to the hospital, and they did so. Defendant and Laymon, then in company with their attorney, went to the county jail where defendant turned the pistol over to the night jailer.

Error is assigned upon an order allowing the endorsement of the names of four witnesses upon the information when the case was called for trial, and in refusing a continuance after such endorsement had been made. Two of the witnesses endorsed did not testify. The third was a deputy sheriff to whom defendant's attorney turned over the gun on the night of the assault. The state attempted to identify the gun by this witness and, in doing so, defendant asked the trial court for permission, which was granted, to make the witness his own, and proceeded to interrogate him

as his own witness. Under the circumstances, defendant cannot now complain about the witness' name not being endorsed on the information. Moreover, no attempt was made by the county attorney to introduce the gun in evidence. The gun was later identified by the defendant after he took the stand in his own defense. The fourth witness was a photographer who attempted to identify a picture he had taken of the complaining witness, Miller, at the hospital some time after the assault. The witness was unable to identify the defendant, and the picture was not offered in evidence. Inasmuch as the two witnesses who did testify merely attempted to identify exhibits which were not introduced, their testimony became ineffectual, and the defendant was not prejudiced thereby. Under the circumstances of this case, it was within the discretion of the trial court to permit the endorsement of the names, as held in repeated decisions of this court, and this discretion appears to have been properly exercised. (*State v. Jackett,* 85 Kan. 427, 116 Pac. 509; *State v. Tassell,* 87 Kan. 861, 126 Pac. 1090; *State v. Bisagno,* 121 Kan. 186, 246 Pac. 1001; *State v. Thyer,* 143 Kan. 238, 53 P. 2d 907; 2 Hatcher's Kansas Digest [Rev. Ed.], Criminal Law, §§ 62 and 110.)

Defendant next contends the court erred in overruling his motion to dismiss at the conclusion of the state's evidence, on the theory the evidence disclosed that defendant was merely defending himself from an attack by Miller. Whether Miller was an aggressor and whether defendant was merely defending himself were questions of fact for the jury under the evidence in the case. Defendant's plea of self-defense was ably covered by the trial court's instructions to the jury. It is the rule, subject to some exceptions not involved in this case, that in criminal cases it is never proper for the court to take a question of fact away from the jury and to decide it itself. (*State v. Truskett,* 85 Kan. 804, 811, 118 Pac. 1047.) A review of the record discloses ample evidence to sustain the charge and the lesser included offenses thereunder.

Defendant further contends that the court erred in giving certain instructions to the jury. The gist of his argument is that he was charged in the information, under G. S. 1949, 21-431, with felonious assault with intent to kill or maim, and that the trial court, in addition to instructing under this section, also instructed under section 21-434, on assault with intent to commit a felony, to wit, manslaughter, and under section 21-435, on maiming, wounding or

causing great bodily harm, under circumstances which would constitute murder or manslaughter if death had ensued, contending that an information charging assault with intent to commit murder will not sustain conviction for an assault with intent to commit manslaughter, citing as authority, *State v. White,* 41 Ia. 316, and *People v. Lilley,* 43 Mich. 521, 5 N. W. 982. This is not the rule of law in this state. These cases were dealt with and thoroughly discussed and distinguished in *State v. Murray,* 83 Kan. 148, 161, 162, 163, 110 Pac. 103. Subsequently, on rehearing, the supreme court of Iowa in *State v. White,* 45 Ia. 325, held that an assault to commit manslaughter is included in an assault to commit murder, and an indictment of the latter offense will sustain a conviction for the former. We have held that sections 21-434 and 21-435 cover lesser included offenses in an information charging assault with a felonious intent under section 21-431, and when the evidence in the case justifies the court's instructing on the respective statutes, it is its duty to do so. (*State v. Davis,* 169 Kan. 251, 218 P. 2d 215.) Other citations of authority may be found in the annotations under the respective sections of the statute. In the instant case, the court did not err in instructing on the respective statutes, and defining the words "murder" and "manslaughter".

Defendant further contends the court erred in not instructing the jury that defendant's counsel could not properly take the witness stand unless he withdrew from the case. There is nothing in the record to indicate that counsel offered to testify, nor that it was necessary for him to do so. There is no merit to this contention.

Defendant next contends the trial court erred in admitting and rejecting certain testimony. The record has been carefully examined and we find nothing in the contention which would justify a reversal of this case.

Defendant also contends the court erred in overruling his motion for a new trial on the ground of newly discovered evidence. He submitted an affidavit of Dr. Cloyes, attempting to show that the bullet fired by defendant entered Miller's lower jaw, passing posterially through his neck. There was no showing of diligence in procuring such testimony at the time of the trial. The evidence, at most, was merely cumulative and the court did not err in overruling his motion for a new trial. Other contentions have been examined and· found to be without merit.

The judgment of the trial court is affirmed.