IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 127,070

STATE OF KANSAS,
*Appellant*,

v.

JOSHUA XAVIER CRAIG,
*Appellee*.

SYLLABUS BY THE COURT

1.

As used in K.S.A. 22-3603, the term "suppressing evidence" has a broader meaning than the suppression of evidence illegally obtained; it includes not only constitutional suppression but also rulings of a trial court that exclude the prosecution's evidence so as to substantially impair its ability to prosecute the case.

2.

An order denying a late motion to endorse witnesses can constitute an order suppressing evidence for purposes of interlocutory appeal under K.S.A. 22-3603 if the State establishes that the order effectively excludes evidence in a manner that substantially impairs its ability to prosecute the case.

3.

A district court abuses its discretion only when its decision is based on an error of law or fact, or when no reasonable person would have taken the view adopted by the district court.

1

4.

In denying a late motion to endorse witnesses, there is no "prejudice by surprise" finding required; it is wholly within the district court's discretion to deny such a motion.

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 23, 2025. Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Oral argument held January 29, 2026. Opinion filed March 20, 2026. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed, and the case is remanded.

*Ethan C. Zipf-Sigler*, assistant solicitor general, argued the cause, and *Kris W. Kobach*, attorney general, was with him on the briefs for appellant.

*Kristen B. Patty*, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

WALSH, J.:  This case, presented on the State's interlocutory appeal, requires us to define the contours of a district court's discretion to deny a belated motion to endorse witnesses. A panel of our Court of Appeals, concluding it had jurisdiction, reversed the district court's denial of the State's third motion to endorse, which sought to endorse 10 witnesses less than two weeks before trial. Relying on caselaw concerning whether a district court abuses its discretion in *granting* a late motion, the panel concluded that the district court applied the incorrect test in *denying* the motion. It remanded with directions to consider whether late-endorsed witnesses would frustrate the defendant's ability to defend against the charges, as measured by prejudicial surprise to defendant. On the defendant's expedited petition for review, we affirm the exercise of appellate jurisdiction. But we conclude that the district court did not abuse its discretion in denying the State's motion when its ultimate conclusion was that the defendant would suffer actual prejudice from the late endorsement of the State's witnesses—two of whom would require the withdrawal of defendant's trial counsel, creating delay and implicating defendant's

2

constitutional speedy trial rights. Accordingly, we reverse the Court of Appeals and affirm the district court.

FACTS AND PROCEDURAL BACKGROUND

*District Court Proceedings*

Joshua Xavier Craig's charges arose from the shooting death of Matthew Smith in mid-August, 2020, in Lansing. As set out by the panel, the general allegations are as follows:

> "On the evening of August 15 and into the morning of August 16, 2020, Stephen Perrin was at a local Lansing bar called The Groggery with his friends Josh Harden and Matt Smith. While there, Perrin had an encounter with Benny Bush, a man Perrin's cousin had beat up about 15 years earlier. Bush's friends jumped Perrin at a party about five or six years after that. The two men had not seen each other since. That night at The Groggery, they 'had some words.' Perrin was a little angry, and Bush was cold and standoffish. Around closing time, Perrin left with Smith in Smith's white Chevrolet pickup. Soon after leaving the bar, as they were driving, Perrin heard 'what sounded like a whistling,' and he 'saw a muzzle flash coming from the car behind' them. Perrin told Smith to pull over, but 'at that same time, the back window broke and . . . [Smith] slumped over.' Smith had been shot in the head." *State v. Craig*, No. 127,070, 2025 WL 1482667, at *1 (Kan. App. 2025) (unpublished opinion).

In a Complaint/Information filed April 7, 2023, the State charged Craig with felony murder based on an underlying count of criminal discharge of a firearm at an occupied vehicle. The complaint endorsed 24 witnesses. The State filed its first motion to endorse witnesses on July 17, 2023 (adding two witnesses). It then filed a second motion to endorse witnesses on August 8, 2023 (adding one witness). Both motions were granted. The district court held a preliminary hearing on August 11, 2023, at which the

3

State presented 9 witnesses—including 5 of the 10 presently at issue. The State also called Dameon Lewis, but during a bench conference, defense counsel explained that he currently represented Lewis in a CINC case. When the district court asked whether Lewis had been "endorsed and listed," defense counsel said "yeah, he's listed." Lewis had *not*, in fact, been endorsed. The following exchange then occurred:

> "[Defense counsel]:  Mr. Melton [the prosecutor], do you need him? I mean, just to get through today (inaudible).

> "[The State]:  If I don't call him—if I don't ask him questions here, are you proposing that you would finish the hearing and then withdraw?

> "[Defense counsel]:  Yeah.

> "[The State]:  I guess we can do that.

> "The Court:  Well, I mean, that's up to you. I don't know what your case is, so if he—

> "[The State]:  I don't—I don't need him for today.

> "The Court:  All right. I was gonna say because if you need him, we're just gonna have to start all over and with new counsel because—

> "[The State]:  Yeah.

> "The Court:  —there's clearly a conflict. So if you don't call him, then, I mean, we could finish this, and you could evaluate whether you have a conflict or not.

> "[Defense counsel]:  Yeah.

> "[The State]:  Okay. Let's do that.

    . . . .

    "The Court:  All right. The State is not gonna call this witness."

The district court ultimately found probable cause and bound Craig over for trial, setting the trial date for December 18, 2023.

The State filed its witness and exhibit list on November 20, 2023. Among the 35 names on the list, the State included 7 of the 10 witnesses who would later come up in its third motion to endorse witnesses.

On December 7, 2023, the State filed a third motion to endorse witnesses, naming 10 witnesses, some of whom were identified in the April 7, 2023 probable cause affidavit, some of whom testified at the preliminary hearing, some who were mentioned at the preliminary hearing but did not testify, and some of whom were named in the State's pretrial witness list, but none of whom had been previously endorsed.

Also on December 7, the State filed a pleading titled "State's Motion for Court to Determine Whether a Conflict Exists for Defense Counsel" acknowledging the known conflict should Lewis be called as a witness and essentially requesting defense counsel be removed and a new attorney appointed for Craig. Defense counsel filed his own motion to withdraw on December 12, 2023, citing the aforementioned conflict with Lewis and another conflict with witness Lacy Richeson, who had not been previously endorsed and who had not been called during the preliminary hearing.

The district court took up the motions at a pretrial conference. There, defense counsel stated that there would be no conflict—and thus no need to withdraw—if the State did not call either Richeson or Lewis. The court then reasoned that it should consider the motion to endorse first, at which point the prosecutor argued that—because

5

all the witnesses were named in the reports and that both parties were "presumably" aware of them since the case's inception—defense counsel could neither "claim surprise" nor "prejudice on these witnesses." The prosecutor admitted that the failure to endorse originally was "simply by virtue of a clerical error made on my part." Although defense counsel conceded that there would be no surprise as to Lewis, he argued "that the endorsement is late" and, thus, "if there's any prejudice, it would be that Mr. Craig would have a delayed jury trial and he wouldn't have the representation that he's had since the case started."

In an oral pronouncement that we will discuss in more detail in our analysis, the district court denied the State's third motion to endorse. The State timely filed a notice of interlocutory appeal pursuant to K.S.A. 22-3603.

*Court of Appeals Proceedings*

On appeal, a panel of the Court of Appeals reversed the district court's decision and remanded with directions "to apply the proper standard." *Craig*, 2025 WL 1482667, at *5. The panel first ruled that interlocutory appellate jurisdiction was proper because the State had established that its case would be substantially impaired without the witnesses. 2025 WL 1482667, at *3-4.

Then, relying on a line of cases holding that K.S.A. 22-3201(g) permits the State "to endorse witnesses at any time unless 'it will result in actual prejudice in [the defendant's] ability to defend against the charges,'" the panel concluded that the district court had employed the wrong test in denying the State's motion, and that it should have focused on whether Craig would be surprised by the new witnesses. *Craig*, 2025 WL 1482667, at *4. Thus, the panel held that the district court abused its discretion by making a mistake of law because "the appropriate standard to be applied by the district

6

court was whether the late endorsement caused actual prejudice to the defense, not whether the State acted with bad faith." 2025 WL 1482667, at *5.

We granted Craig's petition for review challenging the panel's jurisdictional conclusion and its decision to reverse the district court's denial of the State's third motion to endorse witnesses.

ANALYSIS

*Is interlocutory appellate jurisdiction proper?*

Craig first challenges the panel's conclusion that it had appellate jurisdiction. Craig claims the State has failed to show that the district court's decision would substantially impair its ability to successfully prosecute the case, as required by K.S.A. 22-3603 and *State v. Myers*, 314 Kan. 360, 366, 499 P.3d 1111 (2021).

"The existence of appellate jurisdiction presents a question of law subject to unlimited review." *City of Wichita v. Trotter*, 316 Kan. 310, 312, 514 P.3d 1050 (2022).

"Under article 3, section 3 of the Kansas Constitution, we have 'appellate jurisdiction as may be provided by law.' The right of appeal is, thus, purely statutory." *Benchmark Property Remodeling v. Grandmothers, Inc.*, 319 Kan. 227, 233, 553 P.3d 974 (2024). As with jurisdictional questions, this court applies unlimited review to questions of statutory interpretation. *Grandmothers, Inc.*, 319 Kan. at 233.

K.S.A. 22-3603 governs the State's ability to file an interlocutory appeal from the district court's evidentiary rulings in some contexts:

"When a judge of the district court, prior to the commencement of trial of a criminal action, *makes an order* quashing a warrant or a search warrant, *suppressing evidence* or suppressing a confession or admission an appeal may be taken by the prosecution from such order if notice of appeal is filed within 14 days after entry of the order. Further proceedings in the trial court shall be stayed pending determination of the appeal." (Emphases added.)

This court has "held that an order 'suppressing evidence' includes 'rulings of a trial court which exclude state's evidence so as to substantially impair the state's ability to prosecute the case.'" *Myers*, 314 Kan. at 365 (quoting *State v. Newman*, 235 Kan. 29, 34, 680 P.2d 257 [1984]). The statute is intended to permit appellate review of trial court rulings on pretrial motions that may be determinative of the case. *Newman*, 235 Kan. at 35. The denial of a motion to endorse witnesses can constitute an "order . . . suppressing evidence" for purposes of K.S.A. 22-3603. As we have clarified:

"The State can demonstrate substantial impairment of the prosecution even when the district court's evidentiary ruling does not technically foreclose the State from prosecuting the defendant or prevent it from proving the elements of the charged crime. Moreover, we have held that a district court's order to exclude aggravating circumstances evidence at sentencing substantially impaired the State's ability to prosecute its sentencing case, thereby authorizing the State's appeal pursuant to K.S.A. 2020 Supp. 22-3603. Thus, an order excluding evidence need not completely prevent the State from obtaining a conviction to substantially impair its ability to prosecute.

"While appellate courts 'should not take jurisdiction of the prosecution's interlocutory appeal from every run-of-the-mill pretrial evidentiary ruling of a district court,' jurisdiction is proper under K.S.A. 2020 Supp. 22-3603 where the prosecution 'make[s] a showing to the appellate court that the pretrial order of the district court appealed from substantially impairs the state's ability to prosecute the case.' [Citations omitted.]" *Myers*, 314 Kan. at 366.

8

The parties' dispute centers on whether the district court's order "substantially impair[ed]" the State's ability to move forward.

Here, and as the panel's analysis concludes, the State has shown that the evidence "excluded" sufficiently impaired its ability to prosecute Craig to enable the appellate court to exercise interlocutory appellate jurisdiction. As set forth by the panel:

> "The State alleged that Perrin's testimony was necessary to illustrate the animosity between himself and Bush, the precursor to the shooting. And Perrin was in the car with Smith when Smith was shot and killed.
>
> "Anderson took a video on her phone at The Groggery the night of the shooting, placing Craig with Bush. Dangerfield, who was at The Groggery on the night of the shooting to buy drugs from Bush, saw Craig there. He also saw Craig sitting in the passenger seat of a white Cadillac Escalade driven by Stephen Charlton—the vehicle police saw in a QuikTrip video following Smith's vehicle just before the shooting. Police later found gunpowder residue on the passenger side when police dusted the vehicle. Richeson could identify the Escalade and link it to Charlton.
>
> "Dr. Martinez performed the autopsy and would testify to the identification of the victim and the cause of death. Lewis could testify that the firearm used in the shooting was purchased by Craig and, afterward, Craig tried to sell it. Lewis could also testify that Craig confessed to Lewis that he shot the driver of the truck by accident." *Craig*, 2025 WL 1482667, at *3.

Between the probable cause supporting affidavit and the preliminary hearing, the record supports the panel's conclusion that, collectively, the absence of these witnesses would have substantially impaired the State's case:

> "Without these witnesses, the State would not be able to prove the victim's identity and cause of death, the nature of the dispute that led to the shooting, that Craig owned the gun used in the crime, that Craig was riding in the white Escalade driven by

9

Charlton and involved in the shooting, and that Craig confessed to the killing multiple times to multiple people. Accordingly, we find we have jurisdiction over the State's interlocutory appeal." 2025 WL 1482667, at *4.

We affirm the panel's exercise of interlocutory appellate jurisdiction under K.S.A. 22-3603 and will exercise our jurisdiction on review.

*Did the district court abuse its discretion in denying the State's third motion to endorse witnesses?*

Craig next argues that the panel misinterpreted Kansas caselaw in reversing the district court's denial of the State's third motion to endorse witnesses. Craig claims that the district court correctly considered the surrounding facts and circumstances to conclude that late endorsement would prevent a fair preparation of his defense.

"Appellate courts generally review the district court's decision to permit the late endorsement of a State's witness for an abuse of discretion." *State v. Brosseit*, 308 Kan. 743, 747, 423 P.3d 1036 (2018). See also *State v. Campbell*, 207 Kan. 152, 153, 483 P.2d 495 (1971) ("The district court in its sound discretion may permit or deny the endorsement of additional witnesses . . . at any time subsequent to the filing of the information, including during the trial"; "its discretion will not be disturbed on appeal unless it is clearly shown it abused its discretion, and the abuse resulted in material prejudice to the defendant."). "'A district court abuses its discretion when (1) no reasonable person would have taken the view adopted by the district court; (2) the judicial action is based on an error of law; or (3) the judicial action is based on an error of fact.'" *State v. Hillard*, 313 Kan. 830, 838, 491 P.3d 1223 (2021) (quoting *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 [2018]).

Again, to the extent Craig's argument turns on interpretation of a statute, this court's review is de novo. *Grandmothers, Inc.*, 319 Kan. at 233.

In its entirety, K.S.A. 22-3201(g) provides:

"Except as otherwise provided, the prosecuting attorney *shall endorse the names of all witnesses known to the prosecuting attorney* upon the complaint, information and indictment *at the time of filing it*. Except as otherwise provided*, the prosecuting attorney may endorse on it the names of other witnesses that may afterward become known to the prosecuting attorney*, at times that the court may by rule or otherwise prescribe. If any witness is to testify and the prosecuting attorney believes the witness who has provided information is in danger of intimidation or retaliation, the prosecuting attorney may delay identifying such informant witness until such informant witness actually testifies *but in no event shall identification of a witness be delayed beyond arraignment without further order of the court after hearing and an opportunity of the defendant to be heard*." (Emphases added.)

As examined by this court in *State v. Brosseit*, and by the panel here, Kansas courts have long interpreted K.S.A. 22-3201(g) (and its predecessors) as granting the district court discretion to permit the State to endorse witnesses after the filing of a complaint—regardless of whether the State knows about those witnesses at the time of the complaint. *Brosseit*, 308 Kan. at 748-54 (discussing *State v. Price*, 55 Kan. 606, 608, 40 P. 1000 [1895], *inter alia*; analyzing legislative history and noting "the Legislature's more than a century-long acquiescence" to this precedent). But see 308 Kan. at 754-55 (Rosen, J., concurring) ("I would hold that if the State wishes to endorse a witness after it has filed its complaint, then the State has a duty to show that it was unaware of the witness at the time of filing.").

Although K.S.A. 22-3201(g) imposes obligations on the State, it contains no obvious restriction on the district court's power to authorize a late endorsement of

11

witnesses. We appeared to recognize this disconnect in *State v. Foster*. 202 Kan. 259, 260, 447 P.2d 405 (1968) (acknowledging that, although the prosecution failed to endorse witnesses when it filed the complaint, the defense did not notice the omission until after the State had called its third witness at trial; affirming district court's decision to permit late endorsement where "[s]everal of the witnesses had testified at the preliminary examination," defendant and counsel were "well aware of the state's evidence," and "despite the flagrant violation of the statute[,] no prejudice has been shown").

The test set forth by the panel for permitting the State to endorse witnesses after the filing of the complaint accurately reflects Kansas law:

> "The Kansas Supreme Court has consistently interpreted this statutory language to allow the State to endorse witnesses at any time unless 'it will result in actual prejudice in [the defendant's] ability to defend against the charges.' 'A defendant can show actual prejudice when the late endorsement comes as a surprise and the testimony was critical or, in other words, of "a climactic and highly damaging nature."' [Citations omitted.]" *Craig,* 2025 WL 1482667, at *4.

But, unlike *Brosseit* and the overwhelming majority of cases applying K.S.A. 22-3201(g) and its predecessors, Craig does not ask this court to reverse the district court's exercise of discretion in *granting* the State leave to endorse witnesses after the filing of the complaint. See, e.g., *Brosseit*, 308 Kan. at 749-52; *State v. Bell*, 273 Kan. 49, 53-54, 41 P.3d 783 (2002); *State v. Green*, 252 Kan. 548, 553-54, 847 P.2d 1208 (1993); *State v. Thyer*, 143 Kan. 238, 239, 53 P.2d 907 (1936); *State v. Tassell*, 87 Kan. 861, 864, 126 P. 1090 (1912); *State v. Cook*, 30 Kan. 82, 1 P. 32 (1883).

Instead, Craig asks this court to affirm the district court's decision *denying* the State's motion. Only a few other cases have involved a similar procedural posture. See *Newman*, 235 Kan. at 43-44 (holding district court erred in excluding State's proffered

12

evidence based on fruit of the poisonous tree doctrine where there was no unlawful police conduct); *State v. Clay*, No. 84,317, 2000 WL 36746069 (Kan. App. 2000) (unpublished opinion) (holding, *inter alia*, no jurisdiction to review district court's denial of State's endorsement request and other suppression rulings because no substantial impairment); *State v. McAlpine*, No. 78,571, 1997 WL 35436573, at *2-3 (Kan. App. 1997) (unpublished opinion) (reversing denial of motion for late endorsement where record established there was no surprise). Of these, only *McAlpine* applied the same logic employed by the panel here, which effectively suggests that the district court is *required* to grant a State's motion to endorse witnesses *unless* the late endorsement would cause the defendant prejudice in the form of unfair surprise. Cf. *Cook*, 30 Kan. at 85 (court may refuse to endorse where convinced that failure to endorse known witnesses was done purposefully to interfere with defendant's preparation of defense, but where request made "in good faith" and "to promote justice," district court has authority to grant late endorsement, keeping in view the rights of defendant).

The district court's discretion to *permit* a late endorsement—where doing so will not prejudice defendant—is the subject of longstanding precedent. But that precedent does not correlate to a *duty* to sign off on all late endorsements. Cf. *State v. Ferguson*, 228 Kan. 522, 526, 618 P.2d 1186 (1980) (noting the statute makes late endorsement discretionary; permitting late endorsement may serve interests of justice "provided the opposing party or parties are given time to interview said witnesses and provide for cross-checking their testimony . . . [t]he test to be used in determining whether permission should be granted is whether the defendant's rights will be prejudiced").

Further, even if precedent suggests that prejudice via "surprise" is the appropriate focus of a district court's decision to *grant* a late witness endorsement, see *Brosseit*, 308 Kan. at 749, there is no corollary condition on a district court's discretion to *deny* such a motion.

13

Consequently, we conclude that the panel's reference to "the appropriate test for ruling on a late endorsement of witnesses" was mistaken here: the *Brosseit* test addresses the limits on a district court's discretion to grant a late endorsement, not to deny one. See *Craig*, 2025 WL 1482667, at *5.

Again, a district court abuses its discretion only when its decision is based on an error of law or fact, or when no reasonable person would have taken the view adopted by the district court. See *State v. Hillard*, 313 Kan. at 838. To determine whether the district court abused its broad discretion in this case requires a closer read of the record. As discussed below, we agree that the district court should not have raised considerations completely outside the scope of Craig's case, i.e., its frustration with the County Attorney's Office. But ultimately the district court grounded its rationale in concerns about defendant's rights related to the present case, which was well within the discretion provided by the statute and our caselaw.

The district court first noted the statutory requirement that the State "shall" endorse all witnesses on the face of the complaint. It acknowledged *Brosseit*'s holding that "shall" is not mandatory, and witnesses can be endorsed as late as during trial so long as endorsement is not prejudicial to the defendant. The court distinguished the facts of *Brosseit*, where the late endorsement (a phlebotomist) was "not a witness that was going to testify as to very damaging evidence such as what is being proposed here." Noting that "we do not try cases by ambush," the district court expressed frustration with the State's failure to endorse these witnesses on the original complaint, or in the first or second motion, and with the State's move to offer what the State alleged to be "crucial" witnesses "on the brink of a trial."

14

The district court then expressed bitter frustration with what it noted as a pattern of dilatory practice of late endorsements by the County Attorney's Office, despite the district court's prior conversations with other attorneys in the office in unrelated cases.

Getting back to the motion in this case, the district court noted that, "[a]lthough the Supreme Court has said that [the State] can endorse them late when they're witnesses that are known to the defense, it's also fair to assume by a defense attorney that if the State's not gonna endorse a witness, they probably don't plan to call them." The court then reasoned that the failure in this case "is even worse than most because in this case the problem came up at preliminary hearing." The court commented on the expense involved in changing lawyers at this late point in the game and opined that "a five month further delay in this case perhaps may violate the defendant's . . . [constitutional] right to a speedy trial." The court concluded that the current problem in Craig's case was caused by "the negligence, the carelessness, lack of diligence, however you wanna phrase it, of the County Attorney's Office in endorsing these witnesses. The court does believe that there is actual prejudice to the defendant caused by the late endorsement."

The district court further commented that it wanted to "get the County Attorney's Office's attention concerning endorsement of witnesses, and the only way to do that is to deny this motion."

Following this, the State clarified for the district court that (1) there was never a statement or promise that Lewis would not be called as a witness; (2) Craig's counsel had been on notice of the conflict since the preliminary hearing; (3) none of the 10 witnesses were a "surprise"; (4) it was Craig's obligation to establish prejudice from the late endorsement; and (5) "this case should not be used as a means of punishing the State by the court." Readily acknowledging its failure, the State argued that the question "is not

15

why didn't the State do this? The question is, . . . has it caused surprise and prejudice to the defendant," and the State again argued it did not.

Following this record by the prosecutor, the district court issued its ultimate conclusion:  "All right. Thank you. The Court believes it is prejudicial to the defendant to allow the late endorsement 'cause it's gonna cause a delay in his trial and perhaps violate his right to a speedy trial, so the Court is not going to grant the motion."

Notably, the district court did not comment on particular witnesses or make any findings regarding the potential prejudice that would arise due to any individual witness' likely testimony. Instead, it considered and ruled on the motion as a whole. We detect no abuse of discretion in this holistic approach.

Further, we find no error of law or fact in the district court's ultimate conclusion. Nor can we say that no reasonable judge would have reached the same result. Despite the district court's earlier concerning comments about the failures of the County Attorney's Office in other, unrelated cases—along with its desire to "get the County Attorney's Office's attention"—the district court did not base its ruling on these extraneous considerations. Instead, the district court ultimately justified its decision to deny the State's motion based on its view of the prejudice Craig would suffer as a result of the late endorsement. Although we have not previously articulated this distinction, we now hold that it is wholly within the district court's discretion to *deny* a late motion to endorse; there is no "prejudice by surprise" finding required. Thus, the district court did not abuse its discretion by focusing on the prejudice to Craig in the form of "a delay in his trial" and a possible violation of "his right to a speedy trial."

The judgment of the Court of Appeals reversing the district court is reversed. The judgment of the district court is affirmed, and the case is remanded for further proceedings.

LUCKERT, J., not participating.