No. 35,802

THE STATE OF KANSAS, *Appellee*, v. R. T. BARNETT, *Appellant*.

(137 P. 2d 133)

Opinion
filed May 8, 1943.

*John W. Breyfogle, Jr.,* of Olathe, and *Sam D. Parker,* of Kansas City, Mo., argued the cause for the appellant.

*Clayton Brenner,* of Olathe, argued the cause, and *A. B. Mitchell,* attorney general, was on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: In this action the defendant was convicted of assault with intent to kill. He appeals.

For some years prior to the night of the alleged assault defendant and complaining witness had lived in the city of Mission, Kan. Wells, the complaining witness, practiced law and had his office in Mission, and defendant was an auditor for a plow company and lived in that city. Some time before the evening in question Wells had subpoenaed the defendant to be a witness in a case in which he was an attorney. He did not use defendant as a witness. The record is not entirely clear as to what happened, but ill feeling between the two seems to date from that time, although there was evidence that occasionally they had met and had a friendly conversation. On the night of the alleged assault Wells was eating a bowl of chili and drinking a glass of beer in a restaurant. Defendant entered the restaurant and, the evidence of the state shows, began to abuse Wells about his having subpoenaed him to testify in this lawsuit. After the two men had exchanged some words defendant left the restaurant at the request of the restaurant keeper. There is some dispute in the record as to just what happened at that exact time but defendant, at any rate, went to his home about two blocks away. Wells attempted to call defendant on the phone at his home but got no answer. It was about 10:30 o'clock in the evening. On his way to his own home, which was about two blocks to the west of that of defendant, he stopped at the residence of defendant, walked up to the door and rang the bell. There is a sharp conflict in the evidence at this point. Wells testified that he said to defendant, "I would like to talk to you," and defendant said, "Tom Wells, I am going to kill you. . . . Do you hear me, I am going to kill you." Defendant testified that he heard the doorbell ring and that he went to the door and turned on the light and Wells hollered, "Come out here you little son of a bitch or I will kick the God damn door down." Defendant testified that he said, "Go away, Mr. Wells, please go, I

don't want to fight you—go home to your family and don't bother me," but that Wells kept on pounding on the door and defendant went to the bedroom and got his gun because he was afraid of Mr. Wells; that he went back to the front door, opened it and shot Wells twice. One bullet went through Wells' right ear and came out above his right eye. The record is not clear whether the other entered above Wells' heart and came out under his arm or entered under the arm and came out over the heart. The doctor testified that the head wound was a superficial one but the body wound was such as to.be likely to cause death. There is no dispute but that defendant actually fired the two bullets that hit the body of Wells. Defendant claimed that he shot Wells because he was afraid of his life and that if he did not shoot Wells, Wells could enter his house and do him some bodily injury. Since the shooting was admitted, the only question of fact was whether or not defendant shot Wells in self-defense under the instructions of the trial court. The jury considered the evidence and instructions and found the defendant guilty, thus resolving all questions of fact against the defendant.

The defendant urges various errors on the part of the trial court, the first of which relate to the admission of evidence over his objection. These various errors argued by the defendant relate in the main to instances where witnesses were permitted to testify as to disturbances made by defendant at times other than the night of the alleged assault. The defendant argues that evidence of other disturbances at which Wells was not present, and of which he had not learned, were inadmissible and had no probative value on the question which the jury had to decide. The first one of these instances occurred when Wells was testifying. After he had told about the quarrel in the restaurant, counsel for the state attempted to interrogate him about what he did immediately after defendant left. In answer to various questions he attempted to state conversations and each time the court sustained the objection of the defendant. Finally, in answer to a question "What, if anything, did you do after Mr. Barnett left the restaurant or was taken out?" he said "All right. . . . On other occasions Mr. Barnett had been to the Innis' place and had misbehaved and apologized." At this point counsel for the defendant objected. The court inquired whether or not Wells was present and Wells testified "I was down there on probably one other occasion, Yes, sir." The court ruled that part would, stand, whereupon Wells testified further and that, "he later

apologized." Witness then testified about something he told Innis, the restaurant keeper, and the court instructed the jury not to consider what Wells told Innis. As this record stands then Wells was permitted to testify that on one other occasion he had been in the restaurant when Barnett had misbehaved, and that he had apologized for this misconduct. The examination immediately turned upon other phases of what happened that night after the above questions had been asked and answered. Laying aside for the moment the question of whether or not evidence as to other instances of misbehavior on the part of defendant was admissible, it appears that this evidence was an explanation of why Wells sought further conversation with the defendant that night. We are unable to see where this evidence was prejudicial to the rights of the defendant.

Defendant next complains that the court erred in permitting Mr. Wells to testify as to a conversation that occurred between defendant and Wells at the time he subpoenaed Barnett to testify in the lawsuit some months before the assault. The entire episode at the restaurant the night of the assault was conceded by all parties to have arisen as the result of this incident. This evidence of Wells as to what happened at that time was competent because it was explanatory of that incident and showed the relationship of the parties and what led up to the transaction we are considering.

Defendant next complains that the trial court erred in permitting Wells on redirect examination to testify as to medical expenses he incurred as a result of the gunshot wounds inflicted. This evidence was admitted because the defendant asked him on cross-examination about his interest in the outcome of this case, and as to whether he had brought an action against defendant for medical expenses and damages. The defendant himself brought that evidence out on his cross-examinations of Wells. He cannot be heard to complain now because the state asked him on redirect examination whether or not he had incurred a hospital and doctor bill.

The next evidence about the admission of which defendant complains has to do with testimony of Mr. Innis, the proprietor of the restaurant where the quarrel took place. This witness had testified about the scene in the restaurant the night of the assault and about the actual assault which he had witnessed, since he had followed Wells to the home of the defendant. On redirect examination he was permitted to testify as follows:

"Q. Mr. Innis, I will ask you to tell the jury please, whether or not prior

to the night of February 10th, 1942, you had put Mr. Barnett out of your place of business before? A. Yes, sir.

"Mr. Parker: I object to that as not within the issues of this case.

"The Court: The answer will stand. Proceed.

"A. Well, he was using some abusive words.

"Mr. Parker: We object to that unless they were directed at Mr. Wells.

"The Court: The answer will stand."

Defendant points out that this was on an entirely different occasion from the one on the night of the assault, and that the record does not disclose that Wells was present on this occasion, or learned of it.

This evidence of misconduct on an entirely different occasion from the one on the night of the assault was not proper to be introduced by the state at this particular stage of the case as a part of its case in chief. Whether or not it was prejudicial to the rights of the defendant in view of what transpired later in the case will be dealt with further on in this opinion.

The next evidence about the admission of which defendant complains has to do with the testimony of the deputy sheriff. This official testified about being called to the Barnett house the night of the assault and finding a 38-caliber revolver with two discharged shells and five loaded cartridges. He also testified to some other details that he found at the scene of the assault, but which are not important to us here. On redirect examination he was asked the following question: "Mr. Shaw, I will ask you to state to the jury whether or not you had, on prior occasions, been called to the Barnett home or that vicinity because of some disturbance created by Mr. Barnett?" After some objection on the part of counsel for defendant the court permitted him to answer, "I was." When asked about how long before February 10, he said "Some time, I could not judge the time, I do not know, it was some time before that." He then testified as follows:

"Q. What was the occasion for your being called up there?

"Mr. Parker: The same objection.

"A. We got the call on the radio and it said there was a disturbance up there.

"Q. What did you see there when you arrived? A. I seen Mr. Barnett.

"Q. Where was he? A. He was walking back toward the house.

"Q. Did you have another call another time? A. I had another call at another time but I didn't see anybody on that call.

"The Court: May I inquire, officer, were those calls in connection with anything about any disturbance with Mr. Barnett? A. It was on a Sunday,

I believe, and there were some workmen there and I got a call that a man was going to chase them off with a gun and when I arrived there Mr. Barnett didn't have anything and the men weren't there.

"Q. What did he say?  A. He said they were working there and he couldn't sleep and he was going to run them off and I talked with him a little bit and he said they were gone and there wouldn't be any trouble—they had left.

"Mr. Parker: We object to this as incompetent, irrelevant and immaterial and having no bearing on the issues of this case.

"The Court: The answer will stand.

"Q. On the second call, what was the nature of the call.  A. They said there was a disturbance up there and I went up there and couldn't see any-body up there.

"The Court: The second call will be stricken from the evidence and the jury advised not to give any consideration to it.

"Mr. Brenner: That is all.

"Mr. Parker: No questions."

The court struck the evidence with reference to the second call from the record but let the evidence with reference to the first call stand.  An examination of this entire transaction has convinced us that this evidence, as the jury was finally permitted to hear it, was helpful to the defendant rather than damaging.  In view of that conclusion he cannot now be heard to complain of its admission.

Defendant next argues that the trial court erred in admitting in rebuttal the testimony of a waitress at the restaurant concerning what happened at the restaurant on the night of the assault.  As nearly as can be made out from this record, defendant urges that this testimony was incompetent because the witness testified as to what happened outside the restaurant when she was inside.  This objection goes more to the weight to be given the evidence than to its competency.  Furthermore, this record does not disclose but that the witness could see everything about which she testified through a window of the restaurant as well as though she had been outside.

No reason appears why this evidence was incompetent.

The defendant next argues that the court erred in admitting in rebuttal evidence of a patron of the restaurant that he had seen defendant create a disturbance there on occasions other than the night of the assault.  This witness was permitted to testify as to two separate occasions when defendant had created disturbances at this restaurant, neither time in the presence of Wells, and neither occasion ever being brought to his attention.  Defendant points out that the character of defendant had not been put in issue by his

evidence and argues that this testimony was introduced for the sole purpose of prejudicing the jury. We must examine this question in the light of the evidence offered by defendant. He took the stand 'and testified as to what happened in the restaurant on the night of the assault. His account of the difficulty that arose between himself and Wells in the restaurant differed somewhat from that of Wells and Innis. He testified on cross-examination that he had very little conversation with Wells on the night of the assault; that he made no mean remarks toward him and denied that he had ever been put out of the Innis place except on one occasion; that he had never had any argument that would cause trouble; that Mr. Innis had asked him why he came back there and had said for him to go home; his money wasn't good any more and that he had said nothing to Mr. Wells that would be offensive to him. He admitted that he and Innis had quarreled over an episode when Barnett's wife had called him on the phone at the restaurant.

When defendant took the stand and in answer to questions put by the prosecution told a complete story of his relationship with Wells and testified that his conduct in the city generally had been above reproach, he thereby put in issue his entire course of conduct, and it was proper for the state to prove in rebuttal anything which would tend to break down this story of his general conduct, and discredit him as a witness. And that was the purpose for which the evidence was introduced by the state. It was competent for that purpose. Having reached this conclusion as to this evidence, we conclude further that the admission of the evidence of Mr. Innis as to former misconduct in his restaurant, to which reference has already been made, was not reversible error—because the defendant by testifying, as has been noted, made the evidence competent.

Defendant next argues that the trial court erred in excluding certain evidence offered by him. Defendant gave his version of what happened at the Innis restaurant, then told about going to the McIntire home, where his wife was. He was then asked whether while he was there he told either his wife or Mrs. McIntire anything about what happened at the restaurant. The objection of the state to this was sustained. The offer of proof was made out of the hearing of the jury as follows:

"Mr. Parker: We offer to prove by the witness, Mrs. Barnett, that at the time Mr. Barnett returned to the McIntire home he appeared nervous and excited and stated that Tom Wells had run him out of the Innis place' and

had threatened to break him in two. The defendant further offers to prove the above by the testimony of Mrs. Claude McIntire."

Defendant argues that this evidence should have been admitted because it happened so soon after the affair at the restaurant as to be a part of the *res gestae*. The trouble with this argument is that the conversation occurred before the actual assault and was a self-serving declaration and incompetent on that account.

Defendant next argues that the trial court erred in refusing to give the jury a requested instruction as to the right of the defendant to kill in defense of his home. We have examined all the instructions given by the court and it appears that the trial court did give the requested instruction in substance. Under such circumstances it was not error for the trial court to refuse to give a particular requested instruction. See *State v. Myers*, 154 Kan. 648, 121 P. 2d 286; *State v. Barbour*, 142 Kan. 200, 46 P. 2d 841, and *State v. Hoel*, 120 Kan. 221, 243 Pac. 280.

The same may be said of the other instruction which defendant requested.

Defendant next argues that the trial court erred in giving instruction No. 7, wherein the court reminded the jury that certain testimony had been given relative to a misunderstanding and quarrel that had existed between defendant and Wells, and told the jury that it should consider this testimony just as it should consider all the other testimony offered. Just why the trial court pointed out this particular part of the state's case does not readily appear. The fact that the instruction was given, however, does not constitute reversible error.

Defendant next argues that the trial court erred in not instructing the jury on assault and battery and simple assault as defined in G. S. 1935, 21-435 and 21-436. There was no evidence in this record that would justify such instructions. Defendant admitted that he shot Wells twice at close range with a 38-caliber revolver. A loaded 38-caliber revolver is a deadly weapon. Defendant claimed he shot because he feared for his own safety. Under such circumstances he was guilty of assault with intent to kill or he was not guilty at all. Under no circumstances could the shooting of a man with a 38-caliber revolver at close range be simple assault or assault and battery. See *State v. Thyer*, 143 Kan. 238, 53 P. 2d 907; also, *State v. Young*, 109 Kan. 526, 200 Pac. 285.

Defendant next argues that the trial court erred in rendering judgment against the defendant because the jury's verdict was contrary to the evidence. There was evidence that defendant shot Wells while he was on a peaceable errand to the home of defendant. There was evidence to the contrary but the jury must have believed the evidence offered by the state. This court cannot weigh evidence on appeal. See *State v. Brizendine,* 114 Kan. 699, 220 Pac. 174; *State v. Harper,* 137 Kan. 695, 22 P. 2d 454; *State v. Wood,* 145 Kan. 730, 67 P. 2d 544; *State v. Thomas,* 155 Kan. 374, 125 P. 2d 375, and *State v. Dodd,* ante, p. 52, 131 P. 2d 725.

The argument made on the question of whether a new trial should have been granted has been settled by what has been said already in this opinion.

The judgment of the trial court is affirmed.

WEDELL, J., dissents.

SMITH, J. (dissenting): I find myself unable to concur in the opinion of the majority. It would add but little to the value of this opinion to enter into a lengthy discussion of my reasons therefor, but briefly stated they are as follows: The only question proper to submit to this jury was whether the actual assault happened under such circumstances as to raise a reasonable doubt in the minds of the jury as to whether he should be convicted in view of his plea of self-defense. As stated in the majority opinion, the trouble on the night in question grew out of ill feeling that had existed between the complaining witness and defendant as expressed by previous instances of sharp exchange of words between them. The state in the presentation of its case in several instances had witnesses testify to the conduct of the defendant on occasions other than the one in question. The conduct of defendant on these occasions had no relationship whatever to the complaining witness or the relationship of the defendant with the complaining witness. If a question of this kind had been asked just once or perhaps twice I would be willing to pass it over with the statement that although the evidence was inadmissible the error was not prejudicial. However, an examination of this record has convinced me that there was a studied effort on the part of the counsel for the state to present to the jury a little at a time evidence of trouble in which defendant had been involved at other times for no other purpose than

to prejudice the jury against defendant. I cannot agree that when the defendant took the stand he put in issue any specific acts of misconduct other than those with which he had been charged. The law, as I conceive it to be, is that when the defendant took the stand he made himself liable to a very broad and searching cross-examination as to anything that would tend to impeach his credibility. This cross-examination is largely within the discretion of the trial court and has very seldom been questioned by this court. However, there is a just-as-well recognized rule to the effect that once the defendant has been asked about collateral matters on cross-examination and has answered them then the state is bound by his answers and cannot put on evidence in rebuttal to contradict these answers. That is the rule laid down in *State v. Pfeifer,* 143 Kan. 536, 59 P. 2d 442; *State v. Alexander,* 89 Kan. 422, 131 Pac. 139; *State, ex rel., v. Stout,* 101 Kan. 600, 168 Pac. 853, and *State v. McLemore,* 99 Kan. 777, 164 Pac. 161.

For these reasons I am convinced that a new trial should have been granted. I cannot throw off a conviction that defendant was so prejudiced by the admission of this incompetent evidence as to deprive him of a fair trial.

DAWSON, C. J. (dissenting): I dissent from the judgment chiefly because the net result shocks my conscience. The defendant had a quarrel with the prosecuting witness in a beer joint. The keeper of the place quieted that disturbance by leading the defendant out of the place, and he went peaceably to his own home. The prosecuting witness followed him to his home, seeking to renew their controversy at that unseasonable hour in the night. Granted that defendant used too much violence in declining to permit the controversy to be renewed, I think due consideration was not given to these extenuating circumstances when the trial court imposed on defendant a ten years' sentence in the penitentiary.