THE STATE OF NEVADA, PLAINTIFF, RESPONDENT, *v.* LEVON G. KASSABIAN, DEFENDANT, APPELLANT.

No. 3649

April 28, 1952.      243 P.2d 264.

*W. T. Mathews,* Attorney General; *John C. Mowbray,* Deputy District Attorney, Clark County; and *Robert E. Jones,* of counsel on brief, for Respondent.

*Ralli, Rudiak* and *Horsey,* of Las Vegas, for Appellant.

**O P I N I O N**

By the Court, MERRILL, J.:

On November 22, 1950, defendant Kassabian, following jury trial, was adjudged guilty of the crime of attempt to produce a miscarriage, commonly known as the crime of abortion. From that judgment and from order of the trial court denying new trial he has appealed. The

matter with which we are here concerned is an assignment of misconduct on the part of counsel.

The woman upon whom the offense was alleged to have been committed (whom we shall call Patricia) was at the time of the alleged offense 16 years of age. Defendant was a duly licensed physician and surgeon, whose specialty was the treatment of venereal disease. He admitted treating her. He asserted, however, that his examination of Patricia disclosed that she was not pregnant but was suffering from venereal disease and from retroflexion of the uterus and that it was for those matters that he treated her.

Defendant's principal contention upon this appeal is that there was not, as a matter of law, sufficient corroboration of Patricia's testimony under the requirement of sec. 10975, N.C.L.1929, that "the defendant shall not be convicted upon the testimony of the woman upon * * * whom the offense shall have been committed unless she is corroborated by other evidence."

In this regard defendant contends that such corroboration as was presented, when taken by itself and without recourse to Patricia's testimony, is as consistent with defendant's story as with Patricia's. It must be conceded that the corroborative evidence is circumstantial and may, if one accepts the defendant's theory of the case, be considered as consistent with his story. Whether it was *as* consistent with innocence as with guilt was for the jury to consider. Their task in reaching the truth as to the actions of the defendant in the privacy of his office was not, therefore, an easy one and demanded a dispassionate, careful and analytical examination and weighing of all of the evidence. Further adding to its problems, this was a case in which the jury might most naturally succumb to influences of sympathy, passion or prejudice.

In close cases of this character where counsel's argument to the jury by virtue of the uncertain state of the

evidence is magnified in importance, the importance of avoiding the misleading of the jury and of avoiding undue appeals to sympathy, passion and prejudice are likewise magnified. Unfortunately it is likewise true that it is in just such cases that a prosecuting attorney with a sincere conviction of the guilt of the defendant may most easily and understandably commit misconduct. However, as stated in State v. Rodriguez, 31 Nev. 342, 347; 102 P. 863, 865:

"[Prosecuting attorneys] have a duty to perform equally as sacred to the accused as to the state they are employed to represent, and that is to see that the accused has the fair and impartial trial guaranteed every person by our Constitution, no matter how lowly he may be, or degrading the character of the offense charged * * *."

The closing argument to the jury by the prosecuting attorney, with which we are here concerned, may without exaggeration be characterized as inflammatory. All of the natural appeals to sympathy which the case presented were constantly emphasized.

These facts are stated merely to provide background for the actions assigned as misconduct, against which background the extent of prejudice resulting from such actions may more clearly appear.

In 53 Am.Jur. 386, (Trial, sec. 480), it is stated:

"There is no rule of trial practice more universally accepted and applied than the rule that counsel may not introduce into his argument to the jury statements unsupported by evidence produced on the trial and made not as expressions of belief or opinion, but as assertions of fact. Judicial censure of misstatements of the evidence by counsel in arguing their case or statements of facts not in evidence or not warranted as a deduction from the evidence has been equally emphatic in both civil and criminal cases."

In the course of cross-examination of the defendant by the prosecuting attorney we find the following:

"Q. Now, doctor, when you conducted the examination of this girl, was anyone present in your office? A. No, just myself.

"Q. Just yourself and the girl, is that right? A. Yes.

"Q. Isn't it the practice among doctors to always have someone present at the time when they examine a woman? A. Not necessarily, no.

"Q. Isn't it the usual custom? A. No. I don't have a big enough practice to have a nurse at the office, but it is not the usual custom."

The defendant thus testified: First, that he did not employ a nurse; Second, that it was not the usual custom among doctors to have someone present while they examined a woman. No attempt was made to dispute this testimony upon either point and it remains uncontradicted in the record. If, in fact, the usual custom was otherwise it would have been an extremely simple matter to establish. Two other doctors gave testimony but neither was examined upon this point.

In the course of his closing argument to the jury the prosecuting attorney made the following statement:

"Ordinarily doctors have a nurse who is present to witness these treatments to women. Why didn't Doctor Kassabian have a nurse present? He must have been doing something he didn't want anyone else to know about, or else he would have a nurse present during the examination to protect him."

Objection was promptly made and argued by counsel for defendant and the record continues:

"BY THE COURT: I think it may stand. Although it is not in evidence what is the customary practice, the doctor stated that he didn't have enough practice to employ a nurse.

"[BY THE PROSECUTING ATTORNEY] I think, ladies and gentlemen, that the doctor didn't want a nurse around there, because a nurse would see what went on, and a nurse could come in and testify to what went on, and what that little girl told you—

"[BY DEFENSE COUNSEL] Object to that, your

Honor, I believe that is exceeding the limit of opinion and conclusion. I don't want to interrupt—

"BY THE COURT: I think that the testimony of the doctor was that he didn't have a nurse because he didn't have a large enough practice. He can draw his own conclusions from that. You may proceed."

Under the court's ruling relative to these comments we find the prosecuting attorney encouraged to continue in the same vein. Relative to corroboration, itself one of the closest and most difficult determinations for the jury, the argument was made,

"The mere fact that he didn't have a nurse in the room corroborates the fact that he didn't want anyone to know anything about what he was doing, because if there had been a nurse there, she could have testified as to what went on."

Again it was argued:

"I think there is quite a bit of corroboration that he has told you right there, and that is the absence of the nurse and the price, so he, even, has corroborated the girl's story in that respect."

And again relating to the lack of an eyewitness:

"If you think that we must have a nurse present here to testify, when the doctor excluded the nurse from the room, in an effort to hide his actions, then we could never get a case like this, because there never, under any circumstances, would be a case proven against any doctor."

In both State v. Rodriguez, supra, and State v. Cyty, 50 Nev. 256, 256 P. 793, 52 A.L.R. 1015, this court reversed for misconduct of the prosecuting attorney in argument to the jury. In both cases the misconduct involved statements of fact beyond the scope of the record. In the instant case the prosecuting attorney introduced into his argument a statement of fact not only unsupported by the record but flatly contrary to the evidence before the jury: the statement that ordinarily doctors have a nurse present to witness such

treatments. This was presented as an assertion of fact and not of belief or opinion and was clearly improper.

Here, too, the objection to the statement and to inferences drawn therefrom was not sustained and the jury admonished as in the Rodriguez case. (See also: State v. Petty, 32 Nev. 384, 108 P. 934.) The trial court here upheld the prosecuting attorney in his comments and conclusions. While correctly stating the record in one respect the judge still demonstrated a wholly understandable lack of recollection as to the precise state of the record. The jury was thus inadvertently further assisted if not directed into an erroneous conception of the state of the evidence before it.

The state attempts to justify the statement of counsel upon the basis that it is supported by common knowledge and common sense. Even accepting the statement as having some basis in fact, it can hardly be said to be common knowledge. Any knowledge upon the subject possessed by any one individual is more likely to be based upon her personal knowledge as to the practice of a single doctor than upon a general knowledge as to the practice of the medical profession as a whole. The experience by which such knowledge is gained is not an experience generally common to all mankind; nor is it an experience which, when had, is commonly shared. On the contrary, it is an experience private in the extreme. We must, accordingly, reject the state's contention.

From this statement of a fact which the record denies, the prosecuting attorney then proceeds to draw the inference that the failure by the defendant to follow the "customary medical practice" implies that his unwitnessed actions were improper. Even accepting the customary medical practice as having been established, such an inference cannot be allowed. Accept that it is wise and prudent for a doctor to protect himself against unwarranted charges of improper conduct. Accept that it is common practice to take such protective measures. Can the failure of a doctor so to protect himself with a

witness be made to constitute affirmative evidence of impropriety? Are doctors thus to be presumed guilty of impropriety unless they can, by positive proof of an eyewitness, establish the contrary? This indeed would violate a most fundamental principle of justice. Should a doctor employ a nurse and for no apparent reason deliberately exclude her from customary participation in an examination, the situation might well be a different one. Some inference of impropriety might well be drawn depending not upon common knowledge or common medical practice but upon the practice in that office and the particular circumstances of the case.

In the instant case, regardless of whether the customary medical practice might be as the state contends, the defendant positively stated that it was not the practice in his office. Thus the inference of impropriety, even if generally proper, has in this case been dispelled by undisputed testimony that defendant did not employ a nurse and that his reason was that his practice was not big enough. Certainly it cannot be said that common knowledge or common sense will controvert this testimony. On the contrary it appeals to us as common sense that there may well be struggling medical practitioners unable to afford the services of an office nurse. Clearly the inference of impropriety on the part of the defendant was not justified under the state of the record.

Yet, in the prosecuting attorney's final comment with reference to the matter, the inference superimposed upon the original factual statement is extended still further and emerges as a clear implication that the defendant did employ a nurse but deliberately excluded her on the occasions in question. This implication arises from a statement also made as one of fact and not qualified as opinion or belief: a statement of fact which, if true, might well justify an inference of impropriety and support the state's contention that it contributed to the required corroboration.

The prosecuting attorney by one improper step after another has lifted himself by his bootstraps to a point

154

where the jury, if it accepted his argument without self-admonition, must have believed the absence of a nurse to be highly incriminating; to be direct corroboration of Patricia's testimony upon the crucial fact at issue; to be corroboration, moreover, inconsistent with any theory of innocence.

We cannot but regard the comments of the prosecuting attorney as misconduct highly prejudicial in character. It must follow that it was reversible error to permit them to be made.

Reversed and remanded for new trial.

BADT, C. J., and EATHER, J., concur.