No. 42,201

STATE OF KANSAS, *Appellee*, v. EDDIE D. COX, *Appellant*.

(363 P. 2d 528)

Opinion filed July 8, 1961.

*Richard F. Waters*, of Junction City, argued the cause and was on the briefs for the appellant.

*Robert L. Deam*, special prosecutor of Junction City, argued the cause, and *William M. Ferguson*, attorney general, was with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from a verdict of a jury and the judgment and sentence entered thereon by the trial court in a criminal prosecution and from the order overruling defendant's motion for new trial.

The information charged in count one that on October 31, 1959, defendant unlawfully, feloniously, on purpose and of malice aforethought shot Lyle Koberstein with a revolver, with intent to kill him, contrary to G. S. 1949, 21-431; count two, that on October 31, 1959, defendant unlawfully, feloniously, wilfully, without lawful authority seized, kidnapped, confined and took away against his will Lyle Koberstein, and inflicted bodily harm upon him, contrary

to G. S. 1959 Supp. 21-449; count three, that on October 31, 1959, defendant unlawfully, feloniously and wilfully took a 1959 Buick automobile from Lyle Koberstein in his presence and in whose custody, control and possession the vehicle was at the time, and the taking was by violence to Koberstein's person, contrary to G. S. 1949, 21-527. The state at the close of its evidence dismissed the last count.

On January 21, 1960, two prominent and capable attorneys, Lee Hornbaker and Richard Waters of the Geary County Bar Association, were appointed to represent defendant. This proceeding of appointment of counsel along with the next succeeding step, that of setting the amount of bond which involved reference to prior offenses, were both recorded on tape and later broadcast over Junction City radio station KJCK. Defendant strenuously objected to such tape recording and at every possible stage of the trial renewed the objection on the ground that it violated No. 35 of the Canons of Judicial Ethics. These objections were all overruled by the trial court. While this court is not holding these rulings to be reversible error, such proceedings are not approved or sanctioned by this court, and they are not to be allowed in a courtroom or are they to be participated in and indulged in by a court.

Defendant contends that due to extreme coverage of "crime" in and by the news media of Junction City and a linking of this case therewith many prospective jurors had formed an opinion (these were all excused) and in one instance one of such prospective jurors made some statements which were at most irregular, but the trial court immediately admonished the jury to disregard the remarks and the irregularity was thereby remedied.

The only evidence which was wholly uncontradicted and undisputed was offered by the state in regard to the occurrences on Saturday afternoon, October 31, 1959, the day of the alleged commission of the crime. It was shown that defendant, in attempting to pay for a pair of cuff links in a jewelry store in Junction City, presented a check for $157.00 to the jeweler and that the jeweler's wife called Kansas City to clear the check and found the check was "no good." The Junction City police department was called and officer Lyle Koberstein came to the store alone in a police car. He took defendant, and they got into the police car, and after driving a short distance defendant "whipped out his gun" and pointed it at Koberstein. The gun was a loaded Highway Patrolman .357 Mag-

num which was in a firing position. Defendant said he was wanted for murder and one more would make no difference to him and for Koberstein not to try any tricks or funny stuff, to drive straight ahead, not to go into dead end streets and drive the speed limit. At the outskirts of town defendant made him stop and told him to "step away from the police car," whereupon defendant told him to drop his gun belt, but instead Koberstein pulled his gun and defendant shot him in the right arm.

Complaint is made of the trial court's instruction with respect to this evidence and to what extent it would invoke the kidnapping statute (G. S. 1959 Supp. 21-449). The instruction was as follows:

"INSTRUCTION No. 8.

"Section 21-449 is the basis for the complaint as set out in Count Two of the Information and reads as follows:

" 'Kidnaping in the first degree; penalties. . . If any person or persons shall willfully, without lawful authority, seize, confine, inveigle, decoy, kidnap or take or carry away by any means whatever, any person or persons or cause such child or person or persons to be secretly confined against his will, for the purpose and with the intention of causing the father or mother or any other relative of the person so kidnaped, or any other person, to pay or offer to pay any sum as ransom or reward for the return or release of any person or persons, or if bodily harm is in any way inflicted upon the person or persons so kidnaped, said person or persons so guilty of the above-mentioned acts or act, shall, on conviction be deemed guilty of kidnaping in the first degree and be punished by death or by confinement and hard labor in the penitentiary for life, if the kidnaped person has been harmed, or by imprisonment in the penitentiary for not less than twenty (20) years if the kidnaped person is unharmed. If there is a jury trial the jury shall determine which punishment shall be inflicted. . . .' "

In addition to the foregoing, G. S. 1959 Supp. 21-449 further provides:

"If there is a plea of guilty *the court shall determine* which punishment shall be inflicted, and in doing so shall hear evidence. . . ." (Our emphasis.)

Mention should perhaps be made, too, that, as in all criminal cases, a verdict form of "not guilty" was submitted to the jury in this case.

The trial court also submitted to the jury a typewritten form of verdict which had merely to be dated and signed by the jury foreman. It reads:

" 'We, the jury impaneled and sworn in the above entitled case, do upon our oaths, find the defendant, Eddie D. Cox, guilty of kidnaping in the first

degree and further find that the kidnapped person was *unharmed* and direct that said defendant be confined in the penitentiary for not less than twenty years as provided by law.' " (Our emphasis.)

This verdict form was returned by the jury. Under 21-449 and the uncontradicted and undisputed evidence, which showed that Koberstein was shot in the arm with a bullet from defendant's revolver while standing just outside the car and only a short distance from defendant, that form of verdict was unwarranted and improper because it was totally contrary to such evidence. Although no qualification is placed on the word "unharmed" in 21-449, it carries with it the generally accepted meaning of *uninjured,* or *unhurt,* and in *Robinson v. United States,* 324 U. S. 282, 89 L. ed. 944, 65 S. Ct. 666, the Supreme Court of the United States stated:

"We accept the word 'unharmed' . . . as meaning *uninjured.*" (p. 285.) (Our emphasis.)

Under such circumstances defendant's shooting of Koberstein with a revolver and striking him in the arm cannot be considered as not causing any injury, or as justification for saying that Koberstein was *unharmed.* For similar reasoning, see *State v. Barnett,* 156 Kan. 746, 753, 137 P. 2d 133, where this court stated that under no circumstances could the shooting of a man with a 38-caliber revolver be simple assault or assault and battery.

In view of the uncontradicted evidence we are compelled to conclude it was reversible error for the trial court to submit to the jury the typewritten form of verdict including the words:

" '. . . and further find that the kidnapped person was *unharmed* and direct that said defendant be confined in the penitentiary for not less than twenty years as provided by law.' " (Our emphasis.)

In other words, if after the jury found the defendant guilty of kidnapping in the first degree, then the first part of the verdict form stating that much would have been proper. The verdict form could then have read "and direct that said defendant be punished . . .," leaving sufficient blank space to permit the jury to perform the statutory duty imposed upon it by the legislature. For the trial court to include the punishment element in the verdict form as it was submitted to the jury, to be signed and returned as its verdict, constituted a defect as fatal as it would have been for the ransom element to have been so submitted. Here we not only have no evidence of ransom but all the uncontra-

dicted evidence is that ransom did not enter the picture at all. By the same token, the element of *unharmed* did not enter the picture.

G. S. 1949, 21-449, was thoroughly discussed and construed in *State v. Brown*, 181 Kan. 375, 312 P. 2d 832, and the reader is referred thereto for construction of our kidnapping law. However, a 1955 amendment (appearing in G. S. 1959 Supp. 21-449) relating to punishment under the statute in pertinent part reads:

"If there is a jury trial *the jury* shall determine which punishment shall be inflicted." (Our emphasis.)

The foregoing provision is the basis of the second portion of the question presently before us. It is claimed by the state that defendant did not raise the question of punishment in the trial court but the record shows the county attorney made the following objection:

"For the record, I object to the instruction, or the verdict form, under kidnaping, unless the defendant goes along with the same. . . ."

Thus it was called to the trial court's attention at least once about the verdict form and due to the state's earlier objection to the above-quoted instruction 8, in reality there were two complaints as to it. The following statement was also made by the state on the objection to instruction 8:

"If the defense desires the same, I will go along with it. I don't like it, but I will go along with it."

If the trial court took this remark of the state to mean that such "going along," waiver, or agreement between the state and the defense was a justification for the trial court, in any manner, to invade the province of the jury which, under 21-449, had the total power and duty to determine the punishment in this case if, and after, it found defendant guilty of first degree kidnapping beyond a reasonable doubt, such justification is unfounded and untrue in the law. (*State v. Christensen*, 166 Kan. 152, 157, 199 P. 2d 475.)

By reason of the foregoing we are compelled to conclude that defendant is entitled to have and he is hereby granted a new trial. Under these circumstances it would be surplusage to discuss and determine the other points urged on appeal.

Reversed and remanded with directions.

ROBB, J. (concurring specially): I agree with the ordering of a new trial for defendant. However, I would have granted it upon

the first question raised by the objection of defendant to the tape recording of his arraignment and the setting of his bond. I believe that official court proceedings should not be used as program material by radio, television, or other broadcasting media. Members of the bench and bar should not allow judicial proceedings to be used as a source of entertainment even though it may afford a particular judge or attorney some publicity which could not otherwise be obtained. Such practices are forbidden by Canon No. 35 of the Code of Judicial Ethics which reads:

"Proceedings in court should be conducted with fitting dignity and decorum. The taking of photographs in the court room, during sessions of the court or recesses between sessions, and the broadcasting or televising of court proceedings are calculated to detract from the essential dignity of the proceedings, distract the witness in giving his testimony, degrade the court, and create misconceptions with respect thereto in the mind of the public and should not be permitted.

"Provided that this restriction shall not apply to the broadcasting or televising, under the supervision of the court, of such portions of naturalization proceedings (other than the interrogation of applicants) as are designed and carried out exclusively as a ceremony for the purpose of publicly demonstrating in an impressive manner the essential dignity and the serious nature of naturalization."

Many in the legal profession are of recognized proficiency in the field of entertainment by reason of musical or dramatic ability but when the life, liberty, and property of fellow citizens are at stake before our courts, we as judges and lawyers have a duty to see that at no time is there anything in the courtroom which will detract the attention of the judge and the attorneys, the witnesses and the court reporter, as well as that of the jury. It approaches the ridiculous to require a judge to maintain good decorum among the spectators in the courtroom and then permit picture apparatus to be set up, recording machines to be placed, and lights or flashbulbs to be used in the presence of the judge in order to record a commercially sponsored program for later news broadcasting over a local radio station.

Defendant is entitled to a new trial because he did not have an arraignment and his bond fixed in an appropriate judicial proceeding and this is especially true where he was charged with the commission of a crime which carries a penalty of death or imprisonment for life, or at least for a term of years which could not be less than twenty years.

If such a practice as above described is ever allowed to begin, limits will be impossible to determine and faith and respect for all judicial proceedings will be lessened.