HECTOR PACHECO, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 4950

May 16, 1966                                          414 P.2d 100

*J. Forest Cahlan,* and *Robert Santa Cruz,* of Las Vegas, for Appellant.

*Harvey Dickerson,* Attorney General, *Edward G. Marshall,* District Attorney, and *Raymond D. Jeffers,* Deputy District Attorney, Clark County, for Respondent.

# OPINION

By the Court, ZENOFF, D. J.:

Appellant, convicted of kidnapping for the purpose of committing rape or an infamous crime against nature (NRS 200.310), and sentenced by a jury to life imprisonment (NRS 200.320), here appeals that conviction by alleging three errors: (1) the jurors, after impanelment, read prejudicial newspaper articles; (2) the prosecutor made a prejudicial remark in closing argument, wherein he called appellant a "mad dog"; (3) the court admitted over objection prejudicial photographs. We reject all appellant's arguments and find no prejudice. We are convinced appellant received a fair and proper trial.

In the early evening hours of July 10, 1964, defendant, Hector Pacheco, and Patrick McKenna visited Judy, age 17, and Marcia, age 14,[1] to "drive around and drink for a little while." They were not unknown to each other. Their long-standing relationship was connubial without marriage vows.

On this particular evening they drove around, drank beer continuously, stopped to smoke marijuana cigarettes, and took further time out while McKenna and Judy had sexual intercourse.

Later, Pacheco became angered at Judy and when they arrived at the remote area of Sunrise Mountain, east of the Las Vegas city limits, defendant and McKenna commenced to kick Judy and to beat upon her with their fists. After an hour of this, in which she became bloody and bruised, they compelled her into the trunk of the car, and drove to the home of Arnold Crapsie threatening to cut her throat or shoot her if she cried out. They enticed Crapsie into the car, and, with Judy in the trunk, drove back to Sunrise Mountain.

---

[1] Judy and Marcia being minors, their surnames will not be used.

From that point, a detailed account is unnecessary. By the use of threats of shooting and knifing; by beatings with fists, rocks, a beer bottle, a board with a protruding nail; and kickings, upon both Crapsie and Judy, McKenna and defendant compelled Crapsie to have intercourse with Judy, then each to perform oral copulation upon the other. Crapsie managed later to escape. Pacheco and McKenna then performed anal copulation upon Judy and fled in the car. They were later apprehended, and Judy was rescued by sheriff's deputies directed to the scene by Crapsie.

Pacheco and McKenna were charged with three counts: kidnap for the purpose of committing rape or an infamous crime against nature; rape of a female under the legal age of consent (18); and assault with intent to commit rape or an infamous crime against nature.

McKenna pleaded guilty to counts one and two and was sentenced to the state penitentiary. Pacheco was convicted of count one and sentenced to life imprisonment.

On this appeal, Pacheco contends (1) that some jurors after their impanelment, read newspaper accounts of the trial, which articles stated that Pacheco had previously been convicted of robbery and committing an infamous crime against nature, and that codefendant Patrick McKenna had pleaded guilty to kidnap and committing an infamous crime against nature; (2) that the admission into evidence of certain photographs was prejudicial to Pacheco; and (3) that prejudice was suffered when, in closing argument, the prosecutor stated: "We talk about rehabilitation, how can you rehabilitate a mad dog?"

The jury was impaneled on February 15, 1965. It then was released for the day, and the jurors were allowed to return home with the following admonition that is required by NRS 175.325:

"You are admonished that it is your duty not to converse among yourselves or with anyone else on any subject connected with the trial, or to form or express any opinion thereon until the case is finally submitted to you."

This was the same admonition given by the court on the occasion of each recess or adjournment during the trial.

In the evening edition of that same day, the Las Vegas Review Journal printed a story of the commencement of the trial and in it made reference to the fact that McKenna had pleaded guilty to kidnap and committing an infamous crime against nature and had been sentenced to the state penitentiary. The article also stated Pacheco had previously been convicted for robbery.

The following morning, at the opening of court defendant's counsel questioned each juror, in the presence of all, and developed that six of the jurors had read the Review Journal article. In reply to defense counsel's questioning, however, all six stated they could still give Pacheco a fair trial. A motion for mistrial was denied.

The same newspaper contained a story on February 16 entitled, "Vegas Kidnap Trial Starts," in which reference again was made to Pacheco's prior robbery conviction, and on February 17 a third story entitled, "Companion Slips Companion Whiskey During Court Trial." Only one juror read the kidnap article. He was also the only juror to say he had also read the whiskey article. Another juror told of reading the headline of the whiskey story and a third juror said he didn't read it but was told about it.

All three, again pursuant to defense counsel questioning in open court, stated they were not biased by these articles and still could give defendant a fair trial. A second motion for mistrial was denied.

1. At the outset, we note that the newspaper articles appeared factual and objective and not expressly intended to arouse community emotions. Cf. Sheppard v. Maxwell, 231 F.Supp. 37, 44–57 (D.C. Ohio 1964), rev'd, 346 F.2d 707 (6th Cir. 1965), cert. granted, 86 S.Ct. 289 (1965). Our present inquiry, then, centers upon the facts imparted to the jurors by these articles, specifically that of the guilty plea of codefendant McKenna and Pacheco's prior conviction for robbery.

As to a codefendant's plea of guilt, there is substantial authority that such may be admitted in open court if

proper cautionary instructions[2] are given. U.S. v. Dardi, 330 F.2d 316, 333 (2d Cir. 1964) ; U.S. v. Crosby, 294 F.2d 928, 948, 950 (2d Cir. 1961).[3] This seems "implicit recognition * * * that the probable effect on the jury of such knowledge is not sufficiently harmful to require a new trial * * *." U.S. v. Crosby, supra, at 950 of 294 F.2d.

As to the jurors learning of defendant Pacheco's prior conviction for robbery, the situation is more complex. Such a prior crime would have been inadmissible as evidence here, not coming under the specific exceptions to the general rule. Cf. Nester v. State, 75 Nev. 41, 54, 334 P.2d 524 (1959). However, such evidence was *not* here admitted. The present facts only resemble an accidental blurting out. At no point did the trial court sanction the newspaper information with admission. Rather, the court ordered the jurors questioned to ascertain whether they could, in good faith, disregard the matter. It is within this context, then, that we must consider the newspaper information conveyed to the jurors.

In Marshall v. U.S., 360 U.S. 310, 312 (1959), the Supreme Court held the news accounts so prejudicial *in the setting of the case* as to warrant the exercise of its supervisory power to order a new trial. The court said, "The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. Holt v. U.S., 218 U.S. 245, 251. Generalizations beyond that statement are not profitable *because each case must turn on its own special facts * * *.*" (Emphasis added.)

In Marshall, the issue of entrapment concerned newspaper accounts of the defendant's past history and was determinative, while in this case the final determination of defendant's guilt or innocence was conclusively established by the evidence without the need for reference,

[2]We consider the repeated admonition to the jurors to neither form nor express any opinion during the course of the trial to provide the requisite cautionary safeguards under the particular facts of this case, and note that at no time did defendant request any additional admonitions or instructions.

[3]But cf. the eloquent dicta of Medina, J., in U.S. v. Kelly, 349 F.2d 720, 767 (2d Cir. 1965). We consider the present case to come within the "sudden impulse" area discussed in Kelly.

178

directly or indirectly, to McKenna's guilty plea or the past history of Pacheco. See U.S. v. Feldman, 299 F.2d 914, 917 (2d Cir. 1962).

The prejudicial effect of the newspaper publicity cannot be said to be manifest for the jurors were not exposed repeatedly and in depth to the news accounts. Cf. Sheppard v. Maxwell, supra; and Estes v. Texas, 381 U.S. 532 (1965).

The main inquiry is whether there has been an effect on the substantial rights of the accused. The prejudice must be so great that traditional voir dire procedures and admonitions were unavailing to ensure a fair trial. An examination of the facts must be made in order to determine whether prejudice resulted. Irvin v. Dowd, 366 U.S. 717 (1961). In some instances prejudice is inherent. Rideau v. Louisiana, 373 U.S. 723 (1963); Turner v. Louisiana, 379 U.S. 466 (1965). The defendant must be tried in a manner which comports with the due process requirements of the 14th Amendment; thus, we must be alert to the inquiry as to whether this was a trial by newspaper or a trial in accordance with the rules of law.

It is advisable that the trial court augment the statutory admonition to the jurors with a further caution that they not read or listen to news accounts. Failure to do so has resulted in reversal of cases that were closer on the issue of guilt than is this case. Marshall v. U.S., supra. In Pacheco's trial, however, we have confidence that the jurors gave heed to the instruction of the court not to *form* an opinion until the case was finally submitted to them. Adjmi v. United States, 346 F.2d 654 (5th Cir. 1965).

This assignment of error is denied.

2. In his closing argument, the prosecutor made this statement to the jurors:

"Now I will make a suggestion to you, that if you take your pick as far as I am concerned you will take first degree kidnapping with the infliction of serious bodily

injury, and return the verdict of death. We talk about rehabilitation, how can you rehabilitate a mad dog?"

Defense counsel moved for a mistrial which was denied without further comment by the trial judge. Appellant now contends such reference to a "mad dog" constituted prejudicial error and warrants reversal.

Improper argument is presumed to be injurious. If the case, however, is free from doubt, the appellate court will not reverse. State v. Hauptmann, 115 N.J.L. 412, 180 A. 809, 815 (1935); People v. Hines, 30 Ill.2d 152, 195 N.E.2d 712 (1964). If it is closely contested, the error will be considered prejudicial. Berger v. United States, 295 U.S. 78, 88 (1935); State v. Teeter, 65 Nev. 584, 648, 200 P.2d 657 (1948); People v. Talle, 111 Cal.App.2d 650, 245 P.2d 633, 648 (1952). As stated in Garner v. State, 78 Nev. 366, 374, 374 P.2d 525 (1962), "If the issue of guilt or innocence is close, if the State's case is not strong, prosecutor misconduct will probably be considered prejudicial." Citing State v. Kassabian, 69 Nev. 146, 148, 243 P.2d 264 (1952); State v. Skaug, 63 Nev. 59, 66, 161 P.2d 708, 163 P.2d 130 (1945).

Our function, of course, is to insure that all defendants receive a fair trial. To that end, we view each assignment of error with particularity. It makes no difference whether a defendant is sentenced to one day in jail or to prison for life, the standards and requirements are the same. Where there is doubt of the accused's guilt, we would be inclined to grant a new trial. However, this record is clear. An innocent verdict could not be supported. People v. Talle, supra.

The alleged forensic misconduct of the prosecutor, while generally to be frowned upon, and certainly to be viewed with askance, in this instance cannot be classified as reversible error. First, the strongest factor against reversal on this ground is that the objectionable remark was provoked by defense counsel. Post v. State,

41 Ariz. 23, 15 P.2d 246, 248 (1932). It was defense counsel who initiated the subject of rehabilitation as a criterion on sentencing. Second, since the record eliminates any doubt of the guilt of the accused, it seems clear that the offensive remark did not contribute to the jury verdict. The State made no effort to establish an act of intercourse by Pacheco with Judy. The only testimony presented by the defendant was directed solely to the kidnapping—and that testimony was offered by McKenna, a participant in the evening's sordid activities with the defendant, and by Marcia, who at the time the offense was committed was 14, and the mother of two children by Pacheco. The fact that the jury gave no credence to their testimony is understandable.

Whatever the interpretation or definition of "mad dog," its use in common parlance with reference to the conduct of the defendant against Judy cannot be held prejudicial. Still, such toying with the jurors' imagination is risky and the responsibility of the prosecutor is to avoid the use of language that might deprive a defendant of a fair trial.

3. Appellant's third assignment of error was directed to the admission into evidence of six photographs. Their admission was proper.

Appellant's counsel were appointed to prosecute this appeal. We commend their service and direct the lower court to give each of them the certificate specified in NRS 7.260(3) to enable them to receive compensation for their services on this appeal.

Affirmed.

BARRETT, D. J., concurs.

Due to the illness of BADT, J., the Governor designated Honorable John W. Barrett, of the Second Judicial District Court, to sit in his place.

THOMPSON, J., dissenting:

I would reverse this conviction and remand for a new trial, not withstanding substantial evidence of guilt.

The constitutional requirement of a fair trial is not influenced by whether the accused is innocent or guilty, nor by the abhorrent nature of the offense charged. The standards of fundamental fairness must be met in each case. Here, newspaper stories disseminated while the trial was in progress, related inadmissible information about the prior crime record of the defendant, and were read by six of the jurors. That kind of prejudicial publicity poisons the mind and sometimes destroys one's capacity to reach a verdict based solely upon the evidence produced in court. Had such prejudicial matter been erroneously received in evidence we would, of course, set the conviction aside and order another trial. Tucker v. State, 82 Nev. 127, 412 P.2d 970 (1966); Garner v. State, 78 Nev. 366, 374 P.2d 525 (1962); State v. Teeter, 65 Nev. 584, 200 P.2d 657 (1948); Walker v. State, 78 Nev. 463, 376 P.2d 137 (1962), dissenting opinion. This case is different from those just cited only because the jurors learned of the defendant's criminal record from the newspapers rather than from evidence erroneously received during trial. In my view, this difference does not authorize us to rule that the prejudicial impact upon the defendant's right to a fair trial is somehow diminished or nullified. It is not. Marshall v. United States, 360 U.S. 310, 3 L.Ed.2d 1250, 79 S.Ct. 1171 (1959).

In the Marshall case, supra, the sole question considered was whether the exposure of some of the jurors to newspaper articles about the defendant's prior felony convictions was so prejudicial in the setting of the case as to warrant the Supreme Court to exercise its supervisory power over the federal district court and order a new trial. It did exercise that power and ordered another trial. In so doing, the court wrote: "The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence. Cf. Michelson v. United States, 335 U.S. 469, 475, 93 L.Ed. 168, 173, 69 S.Ct. 213. It may indeed be greater, for it is then not tempered by protective procedures." In Marshall, as here, each juror when questioned by the court, stated that he would not be influenced by the news

articles and would decide the case only on the evidence of record. Despite this the court reversed. The following are some of the federal decisions which agree with the rationale of Marshall v. United States, supra. United States v. Accardo, 298 F.2d 133 (7th Cir. 1962) ; Marson v. United States, 203 F.2d 904 (6th Cir. 1953) ; Lane v. Warden, Maryland Penitentiary, 320 F.2d 179 (4th Cir. 1963). See also the state court decisions of People v. Purvis, 60 Cal.2d 323, 33 Cal.Rptr. 104, 384 P.2d 424 (1963) ; Commonwealth v. Crehan, 345 Mass. 609, 188 N.E.2d 923 (1962) ; and cases collected at 31 A.L.R.2d 417.

Judicial frustration attends the problem at hand. The defendant has a constitutional right to a fair trial by an impartial jury. It is the judicial obligation to protect that right. On the other hand the United States Supreme Court has not yet restricted the First Amendment right to freedom of the press where its exercise infects the fairness of the trial of a criminal case. See Irvin v. Dowd, 366 U.S. 717, 6 L.Ed.2d 751, 81 S.Ct. 1639 (1961), concurring opinion of Justice Frankfurter. The corrective action now available to an appellate court is to set aside the conviction and order another trial. Marshall v. U.S., supra; Estes v. Texas, 381 U.S. 532, 14 L.Ed.2d 543, 85 S.Ct. 1628 (1965) ; Turner v. Louisiana, 379 U.S. 466, 13 L.Ed.2d 424, 85 S.Ct. 546 (1965) ; Rideau v. Louisiana, 373 U.S. 723, 10 L.Ed.2d 663, 83 S.Ct. 1417 (1963). Little comfort is gathered from this corrective measure. Government must stand the expense of another trial. Jurors are again summoned from their daily tasks to perform jury service. Witnesses are once more subjected to the ordeal of the court room. The defendant's status is still undecided. The judicial machinery is clogged. I doubt that those in charge of news policy desire multiple trials of a criminal case. With their cooperation we can better realize the goal of a fair trial for all involved.

When a trial court learns that, during trial, jurors have read prejudicial news stories about the defendant, admonition and a cautionary instruction to disregard those stories are essential. The failure to so admonish and instruct will require another trial. United States v.

Leviton, 193 F.2d 848 (2d. Cir 1951); United States v. Carruthers, 152 F.2d 512 (7th Cir. 1945); Hammons v. People, 153 Colo. 193, 385 P.2d 592 (1963); State v. Cox, 188 Kan. 500, 363 P.2d 528 (1963); Briggs v. United States, 221 F.2d 636, (6th Cir. 1955); King v. United States, 25 F.2d 242 (6th Cir. 1928); People v. Purvis, 60 Cal.2d 323, 33 Cal. Rptr. 104, 384 P.2d 424 (1963). Even when the court does utilize this technique its effectiveness is doubtful. Commonwealth v. Crehan, 345 Mass. 609, 188 N.E.2d 923 (1963). It is difficult, if not impossible, for a juror not to be at least subconsciously influenced by extra-judicial matters to which he has been exposed despite honest efforts to remain fair and impartial and to discharge his oath.

In the case at hand the admonition was not given. It is certain that the statutory admonition, NRS 175.325, to which the majority has referred, is not the admonition required to handle the problem. Nor did the lower court give the cautionary instruction contemplated by the cases cited above. Impliedly, therefore, the court allowed the jurors to retain the prejudicial newspaper information, so long as they remained "fair." I have found no case which may be read to approve this procedure. None of the cases cited in the majority opinion would authorize an affirmance here.