**Hector PACHECO, Petitioner,**

v.

**Carl HOCKER, Warden of the Nevada State Prison, Respondent.**

**Civ. No. R–2036.**

United States District Court
D. Nevada.

April 18, 1968.

Hector Pacheco in pro. per.

Harvey Dickerson, Atty. Gen., of the State of Nevada, Carson City, Nev., C. B. Tapscott, Chief Asst. Atty. Gen., Reno, Nev., for respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

THOMPSON, District Judge.

Hector Pacheco, a state prisoner, has petitioned this Court for a writ of habeas corpus. Petitioner was convicted of kidnapping for the purpose of committing rape or an infamous crime against nature and sentenced by a jury to life imprisonment. Petitioner claims that he did not receive the fair trial guaranteed him by the due process clause of the Fourteenth Amendment in that certain jurors admitted reading newspaper articles during the trial prejudicial to Petitioner; that the prosecutor made an inflammatory and prejudicial comment on Petitioner's character, calling Petitioner a "mad dog", during argument; and that inflammatory photographs were improperly admitted into evidence.

After the jury had been impaneled and before it was excused until the following morning, the jurors were admonished not to converse with anyone about the case and not to form or express any opinion on the merits of the case. There was no admonition against reading newspaper articles. That evening a newspaper article carried the information that Petitioner's original co-defendant had pleaded guilty to similar charges and that this Petitioner had been formerly convicted

of robbery and the commission of an infamous crime against nature. The next morning, defense counsel called the article to the attention of the Court. On voir dire, the Court asked each juror whether or not he or she had read the article. The Court then asked the five jurors and the alternate who had read the article if they could still give Petitioner a fair and impartial trial and set aside anything contained in the article. Each juror replied in the affirmative. Upon the close of voir dire, defense counsel moved for a mistrial, arguing, "[I]t is our position, Your Honor, that even though the jurors have testified that they can wipe and not hold the facts alleged in this article against this defendant, there is nothing that the defendant can do, Your Honor, to clear the jurors' minds that he has been convicted of robbery, or these other facts that are mentioned in the article. The prejudice being, Your Honor, that the jury is receiving evidence outside of Court, evidence that is not legally admissible, and there is nothing the defendant can do to contradict this evidence or these facts alleged to his prejudice." The motion was denied.

The voir dire of the jurors had been conducted by the Court and defendant's attorney sought no permission to inquire more thoroughly into the state of the jurors' minds. He did obtain a continuance for the purpose of petitioning the Supreme Court of Nevada for a writ of prohibition, which was unsuccessful. During the six day recess, two further newspaper articles were published, one of the same general tenor as the earlier article and the other announcing that a companion had slipped the defendant some whiskey during the trial.

On motion of defendant, further voir dire of the jurors was conducted in open Court. This time the questioning was by defendant's counsel. One juror admitted reading the article about prior offenses.[1] One juror admitted reading the headline about the alleged whiskey incident and another the whole article.[2] One said he was told about it.[3] Defendant again moved for a mistrial and the motion was denied.

The Supreme Court of Nevada affirmed the conviction in a two to one decision. The general impact of the majority opinion is that while this was not a perfect trial, any errors committed were not prejudicial in the light of the evidence as a whole and were, in effect, harmless. The dissenting Judge believed the information received by some jurors

---

1. "Q. Mr. Tucker, did you read the article?

"A. Yes.

"Q. After reading that article, Mr. Tucker, and the alleged facts in that article, do you feel that you could still give Mr. Pacheco a fair and impartial trial?

"A. That would have no effect.

"Q. No effect at all?

"A. No, sir.

"Q. Even though it mentions other offenses by the defendant Pacheco and another party, you can still give Mr. Pacheco a fair and impartial trial?

"A. Yes. As I see it, we are trying him for one thing, and it has nothing to do with anything else.

"Q. You can completely set this aside and just determine this case on the facts presented in this case?

"A. Yes."

2. "Q. Mr. Halverson?

"A. I saw the headline, that's all.

"Q. After reading the headline, Mr. Halverson, do you feel that you can still give Mr. Pacheco a fair and impartial trial?

"A. I think I can. I don't think that has anything to do with the trial.

"Q. Mr. Tucker, did you read that article?

"A. Yes.

"Q. Do you still feel, Mr. Tucker, after reading the article that you can give Mr. Pacheco a fair and impartial trial?

"A. Certainly, that had nothing to do with what he is being tried for."

3. "Q. Mr. Crite?

"A. I didn't read it but was told about it.

"Q. Well, from the person who told you the alleged statements in this article, Mr. Crites, do you feel that you can still give Mr. Pacheco a fair and impartial trial?

"A. Yes, sir."

from newspaper articles to be so inherently prejudicial as to require a new trial. It is not clear what his opinion might have been if the trial judge had given strong, forceful, direct and repetitive admonitions against reading newspaper articles and against considering any matters not brought out by the evidence in open Court. Pacheco v. State, 82 Nev. 172, 414 P.2d 100.

We are faced with an ever-recurring problem which, for us, is posed by the following questions:

■ Are prejudicial error and lack of Fourteenth Amendment due process, in the context of the Sixth Amendment right to a fair trial, synonymous? If a Federal Judge, sitting on the Supreme Court of Nevada, would have joined in the dissenting opinion rather than the majority opinion of that Court on direct review of the conviction, should that Judge ipse dixit declare a violation of federal constitutional rights on a petition for habeas corpus? Are principles announced by the Supreme Court of the United States, in exercise of its supervisory power over federal court trials (Cf. Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250), conclusive in application of the due process—fair trial requirements to the state courts? The proper answer to each of these questions is "No." Hilliard v. Arizona, 9th Cir. 1966, 362 F.2d 908; Wolfe v. Nash, 8th Cir. 1963, 313 F.2d 393.

■■ Each case must be decided on its own facts. Irvin v. Dowd, 366 U.S. 717, 728, 81 S.Ct. 1639, 6 L.Ed.2d 751. Great service will be done the cause of habeas corpus review by the Court which evolves a principle other than some judge's "seat of the pants" feeling to distinguish the difference between constitutional lack of due process and reversible error under the trial standards of a particular state. A pedestrian approach may be to summarize what the Supreme Court of Nevada held. We think a fair analysis of the holding is: If, after impaneling the jury, the Judge permits it to separate, giving the standard admonition but no specific instruction against reading newspapers, and thereafter it is learned that some jurors have read newspaper articles containing information about a co-defendant's plea of guilty and about the defendant's previous convictions which would not be admissible as trial evidence; and if, on interrogation by the Court and unrestricted interrogation by the defense counsel in open Court, each juror who read the articles affirms his ability to set the information aside and accord the defendant a fair trial, accompanied by such expressions from the minds of the jurors as "As I see it we are trying him for one thing and it has nothing to do with anything else" (T. 117), and "Certainly, that had nothing to do with what he is being tried for" (T. 118); and if the trial judge thereupon denies a motion for a mistrial but neglects to specifically admonish the jury to disregard the articles except insofar as such an admonition may be inferred from the stock instructions given at the conclusion of the evidence; and if the evidence adduced establishing defendant's guilt is overwhelming (as it is in this case), under these circumstances no prejudicial error has occurred which requires a new trial. We discern nothing in such a holding which should shock the sense of justice and fair play of even the most sensitive jurist.

■ The "mad dog" reference and the admission of photographs cannot conceivably attain the proportions of failure of due process of law. Accordingly,

It is ordered that the petition for a writ of habeas corpus be, and it hereby is, denied.